[No. B073304 Second Dist., Div. Seven. June 15, 1993.]

BARBARA HIOTT, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BUILDING MAINTENANCE SERVICE COMPANY, Real Party in
Interest.

714

**COUNSEL**

Morgan, Wenzel & McNicholas, John P. McNicholas and Diane C. DeFelice for Petitioner.

No appearance for Respondent.

Rosato & Samuels, Michael B. Magloff and Mark S. Hill for Real Party in Interest.

**OPINION**

**WOODS (Fred), J.**—Petitioner, plaintiff in a personal injury action, seeks a writ of mandate to vacate a superior court order requiring petitioner to produce a videotaped conversation between her attorney and herself. Because substantial evidence supports the trial court's finding that petitioner

waived her attorney-client privilege (Evid. Code,[1] § 912, subd. (a)) we deny the petition.

## Procedural and Factual Background

On December 26, 1990, Barbara Hiott (petitioner) filed a complaint against Building Maintenance Service Company (BMS, Real Party in Interest) for personal injuries allegedly suffered in a slip and fall on January 4, 1990.

In due course, on August 28, 1991, BMS served on petitioner's attorneys a demand for production of writings[2] and documents (Code Civ. Proc., § 2031). Item No. 6 demanded: "All writings (as defined in Evidence Code Section 250) pertaining to or depicting the facts and events which form the basis of your Complaint including, but not limited to, statements, recordings, interviews, transcripts and correspondence."

Petitioner's response to item No. 6 (signed by her attorneys and verified by petitioner) was the following:

"We do not have any of the items you have requested, such as witness statements or recordings, except we understand that our referring attorney has a video of plaintiff while in the hospital. You are welcome to a copy of that video at your own expense."

During the next six months BMS attorneys periodically requested the subject videotape and petitioner's attorneys consistently stated that petitioner's attorney-brother (Lawrence Andrew Valdivieso), who had done the videotaping, would furnish the videotape to them and they would provide it to BMS. But on May 13, 1992, one of petitioner's attorneys[3] (Diane C. DeFelice) informed BMS that Mr. Valdivieso had sent the videotape to them, they had reviewed it, determined it contained "attorney-client privileged information," and would not provide the videotape to BMS.

BMS filed a motion to compel production of the videotape (Code Civ. Proc., § 2031, subd. (m)), petitioner filed an opposition, and on August 28,

---

[1]Statutory references, unless otherwise noted, are to the Evidence Code.

[2]"Writings" was used as defined by Evidence Code section 250: " 'Writing' means . . . photographing, and every other means of recording upon any tangible thing any form of communication or representation, including . . . pictures, sounds . . . or combinations thereof."

[3]Two attorneys from Morgan, Wenzel & McNicholas actively represented petitioner: John P. McNicholas and Diane C. DeFelice.

1992, following a hearing, the court ruled[4] petitioner was to produce the videotape *with sound deleted.*

BMS moved the court to reconsider its ruling, petitioner filed an opposition, and on October 8, 1992, the court granted the motion. It appointed a referee to determine if the videotape contained privileged attorney-client communication and, if so, had petitioner waived the privilege.

On November 25, 1992, the referee filed his report. He found the videotape contained privileged attorney-client communication but "Plaintiff waived the attorney-client privilege for the tape by voluntarily consenting, under oath, to disclosure of the tape to defendants without asserting this privilege."

Petitioner filed an opposition to the referee's report, BMS replied, and on January 14, 1993, the court adopted the referee's report and ordered petitioner to produce the videotape *with sound.*

Petitioner filed the instant petition with this court on February 16, 1993. On February 18, 1993, we requested opposition and on February 26, 1993, BMS filed opposition, exhibits, and a verified answer. On March 11, 1993, we issued an alternative writ, permitting petitioner until April 9, 1993, to file a reply and setting oral argument for June 3, 1993. On April 14, 1993, we ordered all trial court proceedings stayed.

## DISCUSSION

■ "It is the established rule that trial court rulings concerning discovery sanctions will generally not be reviewed by extraordinary writ and that the aggrieved party has an adequate remedy on appeal after judgment. . . . Exceptions to this rule exist where compelled disclosure of a claimed privilege is threatened." (*Motown Record Corp.* v. *Superior Court* (1984) 155 Cal.App.3d 482, 488 [202 Cal.Rptr. 227] [202 Cal.Rptr. 227], internal citations omitted.)

We issued the instant alternative writ because the challenged order compels disclosure of a videotape as to which a privilege is claimed.

1. *Standard of review*

■ We review a trial court order to determine if its factual determinations are based upon substantial evidence. In making its determinations the

---

[4]The court, at a later hearing, explained its ruling: "When I ruled on it the first time, I guess my hope was, by releasing the video, that maybe the issue would go away. Maybe you didn't need the audio. I wasn't really that familiar with the issues in the case."

trial court considered declarations, supporting affidavits, interrogatories, verified documents, depositions, counsel correspondence, and other materials.[5] "The trial court . . . was able to assess credibility and resolve any conflicts in the evidence. Its findings . . . are entitled to great weight. Even though contrary findings *could* have been made, an appellate court should defer to the factual determinations made by the trial court when the evidence is in conflict. This is true whether the trial court's ruling is based on oral testimony or declarations." (*Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 479 [243 Cal.Rptr. 902, 749 P.2d 339], original italics.)

■ "[A]n order . . . of a trial court will be sustained, without regard to the reasons given by that court, if adequate grounds existed for the making of that order. . . ." (*West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407, 413-414 [15 Cal.Rptr. 119, 364 P.2d 295].)

2. *Finding: the videotape contains a confidential communication between client and lawyer*

The trial court found that the videotape contained a confidential communication between client (petitioner) and lawyer (Lawrence Andrew Valdivieso).

Section 954 states a "client . . . has a privilege to refuse to disclose . . . a confidential communication between client and lawyer. . . ." " 'Client' means a person who . . . consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity . . . ." (§ 951.) " 'Lawyer' means a person authorized or reasonably believed by the client to be authorized to practice law . . . ." (§ 950.) " '[C]onfidential communication between client and lawyer' means information transmitted between a client and his lawyer in the course of that relationship and in confidence . . . ." (§ 952.)

■ We conclude substantial evidence supports this finding by the trial court.

Only two persons were present during the videotaped conversation, petitioner and her brother, Mr. Valdivieso. So far as the record presented to us discloses, petitioner presented no declaration, affidavit, or other cognizable representation concerning whether during the subject conversation she considered herself a "client," her brother as her "lawyer," or their communication "confidential." Mr. Valdivieso, however, did execute a declaration, part of the materials before the trial court.

---

[5]The exhibits attached to the petition number 425 pages and the exhibits attached to Real Party in Interest's opposition number 211 pages.

In his declaration, Mr. Valdivieso indicated he visited his sister in the hospital the day she was injured, January 4, 1990. He implied that *that* visit was as a brother, not a lawyer. He declared: "After observing her condition and speaking with BARBARA HIOTT, my role changed from a concerned brother to an attorney gathering information for potential litigation." Mr. Valdivieso, who had been petitioner's attorney in two prior lawsuits, returned to the hospital two days later, January 6, 1990, and "as her attorney . . . videotaped my questions and her answers regarding the accident which is the subject matter of this pending lawsuit."

Although the declaration thus expressly states Mr. Valdivieso considered his role that of petitioner's attorney, the declaration is silent concerning whether petitioner considered her role that of Mr. Valdivieso's client. Unless, on January 6, 1990, petitioner "consult[ed] [her brother] for the purpose of retaining [him] or securing legal service or advice from him . . . ." (§ 951) she was not a client. If she was not a client, no client-lawyer relationship existed (regardless of how Mr. Valdivieso considered his role). If no client-lawyer relationship existed, the communication was not confidential and no privilege existed.

Mr. Valdivieso's declaration does not state that petitioner "consulted" him, "retained" him, or inquired about "securing" his "legal service or advice." (§ 951.)

Despite these omissions, the trial court inferred that on January 6, 1990, petitioner considered herself a client, her brother a lawyer, and their communication confidential. We are satisfied substantial evidence supports this inference.

On January 4, 1990, petitioner's brother visited her without a video camera. He was "a concerned brother." On January 6, 1990, her brother came to the hospital with a video camera, a fact she would have noted. When, after only a "brief salutation," her brother began asking her questions (as "an attorney gathering information for potential litigation") about the circumstances of her slip and fall—while recording his questions and her answers—it would have been obvious to her that this was not "brother-sister talk" but rather "client-lawyer communication." Her responsive answers evidenced approval and confirmation of the lawyer-client relationship and its confidentiality.

The trial court properly found the videotape contained a confidential communication between client and lawyer.

### 3. *Finding: petitioner waived her lawyer-client privilege by consenting to disclosure of the videotape*

Section 912, subdivision (a) specifies two ways the holder of a privilege may waive the privilege. One way is by disclosing a significant part of the communication. No claim is made that petitioner waived her privilege by disclosing a significant part of the communication.[6]

The second way is by consenting to disclosure. As to consent, section 912, subdivision (a) provides: ". . . the right of any person to claim a privilege provided by Section 954 (lawyer-client privilege) . . . is waived with respect to a communication protected by such privilege if any holder of the privilege . . . has consented to such disclosure made by anyone. Consent to disclosure is manifested by any statement . . . indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege."

■ If there is substantial evidence that, on September 23, 1991, petitioner expressly consented to disclosure of the videotape *or* had "legal standing and opportunity to claim the privilege" but failed to do so, then the trial court's finding of waiver must be sustained.

We are satisfied there is such substantial evidence.

On September 23, 1991, petitioner executed her "Response To Request for Production" with the aid of Attorneys John P. McNicholas and Diane C. DeFelice. A third attorney, her brother Mr. Valdivieso, also still represented her.[7]

Her response acknowledged the existence of the subject videotape and stated: "You are welcome to a copy of that video . . . ." In the verification of her response—signed and dated under penalty of perjury—petitioner stated: "I have read the foregoing RESPONSE . . . and know its contents . . . . The matters stated in the foregoing document are true of my own knowledge. . . ."

---

[6]Petitioner did disclose, pursuant to the trial court's first ruling, *part* of the videotaped communication, the visual part. And petitioner's attorney conceded the order, requiring this partial disclosure, was correct.

[7]Attorney John P. McNicholas, in his December 16, 1992, declaration, declared that on September 23, 1991, Lawrence Valdivieso was "our co-counsel."

Petitioner's verified response, while represented by three attorneys, constituted express "consent to . . . disclosure" within the meaning of section 912.

In that same response, because she had "legal standing and opportunity to claim the privilege" (see Code Civ. Proc., § 2031, subd. (f)), petitioner's "failure to claim the privilege" also constituted "consent to . . . disclosure" within the meaning of section 912. (See *Calvert* v. *State Bar* (1991) 54 Cal.3d 765, 780 [1 Cal.Rptr.2d 684, 819 P.2d 424].)

Authorities relied on by petitioner are inapposite (*Mitchell* v. *Superior Court* (1984) 37 Cal.3d 591 [208 Cal.Rptr. 886, 691 P.2d 642]; *San Diego County Department of Public Welfare* v. *Superior Court* (1972) 7 Cal.3d 1 [101 Cal.Rptr. 541, 496 P.2d 453]); *Maas* v. *Municipal Court* (1985) 175 Cal.App.3d 601 [221 Cal.Rptr. 245]) or distinguishable (*Roberts* v. *Superior Court* (1973) 9 Cal.3d 330 [107 Cal.Rptr. 309, 508 P.2d 309]).

*Roberts* involved a patient-psychotherapist privilege. Roberts, a personal injury plaintiff, signed a "form consent presented her by defendant's insurance carrier six days after her collision with defendants' vehicle. According to petitioner, the consent form was signed before she had consulted an attorney." (*Roberts* v. *Superior Court, supra,* 9 Cal.3d at pp. 342-343, fn. omitted.)

The California Supreme Court narrowly construed the form, holding it inapplicable to petitioner's "past psychiatric treatment." (9 Cal.3d at p. 343.) In doing so, the Supreme Court relied upon such factors as the form having been supplied to the plaintiff by defendant insurance company, plaintiff was unrepresented by counsel, and its hesitancy "to sanction the solicitation of such waivers." (*Ibid.*) None of these factors are involved in the instant matter.

Having concluded that substantial evidence supports the trial court's finding of a section 912 waiver, we need not consider other issues raised by Real Party in Interest: waiver under Code of Civil Procedure section 2031 (see *Schaff* v. *Superior Court* (1983) 146 Cal.App.3d 921 [194 Cal.Rptr. 546]; *Sheets* v. *Superior Court* (1967) 257 Cal.App.2d 1, 8 [64 Cal.Rptr. 753]); and petitioner's defective petition (see Code Civ. Proc., §§ 1103, 446; *Krueger* v. *Superior Court* (1979) 89 Cal.App.3d 934 [152 Cal.Rptr. 870]. But see *United Farm Workers of America* v. *Agricultural Labor Relations Bd.* (1985) 37 Cal.3d 912, 915) [210 Cal.Rptr. 453, 694 P.2d 138].

## DISPOSITION

The petition is denied. Costs on this review proceeding are awarded to Real Party in Interest.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied July 6, 1993, and petitioner's application for review by the Supreme Court was denied September 2, 1993.