[No. B098298. Second Dist., Div. Seven. June 18, 1996.]

TOYOTA MOTOR SALES, U.S.A., INC., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
NIDIA ELIZABETH CHAVEZ et al., Real Parties in Interest.

**COUNSEL**

Bowman & Brooke, H. Franklin Hostetler III, Karen T. Rigberg, Brian Takahashi, Snell & Wilmer, Richard A. Derevan and Julianne G. Sartain for Petitioners.

No appearance for Respondent.

Peter D. Collisson, Butler, Wooten, Overby, Cheeley, Pearson & Fryhofer, Albert M. Pearson III, Thon, Beck, Vanni, Phillipi & Nutt and Anthony de los Reyes for Real Parties in Interest.

**OPINION**

**WOODS, J.**—Petitioners, defendants in an automobile product liability action, seek a writ of mandate to vacate a superior court order denying their motion to disqualify plaintiffs' counsel. We deny the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 1994, plaintiffs (and real parties in interest) Nidia Elizabeth Chavez, Willivaldo Cruz, and Francisco Herrera were in a 1982 Toyota Corolla when it was rear-ended. Their Toyota rolled over and caught fire. Ms. Chavez, who was eight months pregnant, suffered substantial burn injuries and lost her child. Mr. Cruz and Mr. Herrera also were injured.

On November 23, 1994, plaintiffs filed the instant action alleging a Toyota Corolla design defect caused the fire and their resultant injuries.

Plaintiffs' counsel retained Ronald Elwell, a fuel system design engineering expert. On June 12, 1995, plaintiffs' counsel and Ronald Elwell, in the presence of counsel for defendants-petitioners, inspected the subject 1982 Toyota Corolla.

On October 4, 1995, defendants-petitioners moved to disqualify plaintiffs' counsel. The motion stated plaintiffs' counsel had "acquired confidential information while working with Ronald Elwell, who was a consultant to the Toyota Defendants on fuel system product liability litigation . . . prior to his retention by the Plaintiffs . . . ." Plaintiffs filed an opposition.

On November 28, 1995, the trial court (Superior Court Judge Judith C. Chirlin) heard and denied the motion.

On December 28, 1995, the instant petition was filed. On January 2, 1996, this court summarily denied the petition.

On January 12, 1996, a petition for review was filed with the California Supreme Court and on February 29, 1996, that court granted review, transferred the matter to this court with directions we vacate our denial order and issue an alternative writ.

On March 14, 1996, in compliance with those directions, we issued an alternative writ.

The matter has been briefed and argued.

## DISCUSSION

"A trial court's authority to disqualify an attorney derives from the power inherent in every court, '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'" (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 585 [283 Cal.Rptr. 732].)

Attorney disqualification has been upheld when plaintiffs' counsel employed a paralegal who had obtained confidential information about the action while formerly employed by defense counsel (*In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d 572, 585) and when counsel retained an expert witness *after* that witness had obtained confidential information from opposing counsel. (*Shadow Traffic Network* v. *Superior Court* (1994) 24 Cal.App.4th 1067 [29 Cal.Rptr.2d 693].)

■ Hiring a former consultant, like "[h]iring a former employee of an opposing counsel is not, in and of itself, sufficient to warrant disqualification of an attorney or law firm." (*In re Complex Asbestos Litigation, supra*, 232 Cal.App.3d at p. 592.)

*If,* however, a former consultant or employee is shown to have possessed confidential information material to the pending litigation, a *rebuttable* presumption arises that the consultant has disclosed such information to present counsel. (*In re Complex Asbestos Litigation, supra*, 232 Cal.App.3d at p. 593.) If the presumption is rebutted, disqualification is not required. If not rebutted, disqualification may be required. (*Ibid.*)

As the trial court recognized, the threshold question is: did the consultant acquire confidential information from opposing counsel? The trial court, at the November 28, 1995, hearing, stated: "Let me stop you for a second. [¶] Don't we have a significant dispute here because you [Petitioners] say we gave him [Ronald Elwell] privileged information and he said 'They didn't give me any privileged information[.'] [A]nd you won't tell me what the privileged information is that was allegedly given."

By its order denying the disqualification motion, the trial court impliedly found that Ronald Elwell had *not* acquired confidential information from opposing counsel.

■ "On review of an order granting or denying a disqualification motion, we defer to the trial court's decision, absent an abuse of discretion." (*In re Complex Asbestos Litigation, supra*, 232 Cal.App.3d at p. 585.) When substantial evidence supports the trial court's decision, an appellate court must uphold that decision. (*Ibid.*; *Shadow Traffic Network* v. *Superior Court, supra*, 24 Cal.App.4th 1067, 1083; *Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 479 [243 Cal.Rptr. 902, 749 P.2d 339]; *Hiott* v. *Superior Court* (1993) 16 Cal.App.4th 712, 716-717 [20 Cal.Rptr.2d 157].)

■ We find substantial evidence supports the trial court's decision.

Petitioners, in support of their disqualification motion, provided declarations from Attorneys Ferrell, Jennings, and Maley. Each declared he/she had retained Ronald Elwell as an expert consultant for Toyota in an earlier lawsuit, had received his analysis of the subject burned Toyota, and together had attended a meeting which "included counsels' candid assessment of strengths and weaknesses of the case from both a factual and technical standpoint."

In opposition, plaintiffs (real parties in interest) presented a detailed eight-page declaration by Ronald Elwell in which he stated:

"6. I was retained by Toyota's attorneys to evaluate fuel-fed fire cases, mostly in the late 1980's up to 1991, and always with the understanding that I would ultimately be called upon to render opinions at depositions and/or trial as an independent expert appearing on behalf of the attorneys representing Toyota. I was never hired on behalf of Toyota to evaluate vehicle designs outside of litigation. I was retained as an engineer who was given engineering data, documents or other evidence, or deposition testimony, to review with the intention of having me render various opinions. The information given to me was *always* factual or technical information that was discoverable in the case.

"7. As an expert appearing on behalf of Toyota, I have been designated as an expert trial witness on several occasions, I have been deposed as a testifying expert witness, and I have testified in at least one trial. On several of the cases in which I was retained on behalf of Toyota, the case was settled by Toyota. I was *never* part of discussions that led to settlement.

"8. I have attended meetings with Toyota lawyers defending cases against Toyota. At no time was I involved in discussions regarding Toyota trial strategy, Toyota confidential design and testing information, or other Toyota attorney-client confidences. In discussions with any Toyota litigation representative I was never exposed to the insights and/or thought processes of Toyota's counsel, or of Toyota employees or engineers, who may have been involved in preparing Toyota's technical and legal defenses. Any discussions I had with Toyota's attorneys, employees or experts were limited to my views on the alleged product defects and the grounds for those views. I was never told or led to believe that anything revealed to me as a result of my employment as an expert was not subject to disclosure during discovery or on cross-examination.

"9. My practice, as an independent engineer and a testifying expert, is (and always has been) not to permit such confidential information to be disclosed in my presence. It is my understanding that, as a testifying independent expert, everything disclosed to me is subsequently discoverable by the opposing party as a matter of law."

Credibility, even when based upon conflicting declarations, is determined by the trial court. (*Hiott* v. *Superior Court, supra,* 16 Cal.App.4th 712, 716-717.)

The trial court did not abuse its discretion in denying the motion to disqualify plaintiffs' counsel.

## DISPOSITION

The petition for a writ of mandate is denied. Costs on review are awarded to real parties in interest.

Lillie, P. J., and Johnson, J., concurred.