710 So.2d 690 (1998)
CARNIVAL CORPORATION and/or Carnival Cruise Lines, Inc., Petitioner,
v.
Samantha ROMERO and Emilio Romero, III, Respondents.
No. 97-3269.
District Court of Appeal of Florida, Fifth District.
May 1, 1998.
*691 Ted L. Shinkle of Gray, Harris & Robinson, P.A., Melbourne, for Petitioner.
Herbert T. Schwartz of Crowley & Douglas, L.L.P. and David H. Burrow of Burrow & Parrott, L.L.P.,Houston, TX, for Respondents.
W. SHARP, Judge.
Carnival Corporation and/or Carnival Cruise Lines, Inc. (Carnival) petitions this court for a writ of certiorari to quash an order of the circuit court which denied its motion to disqualify Samantha and Emilio Romero's (the Romeros) counsel and experts in a lawsuit they filed against Carnival. We deny the writ because Carnival has failed to demonstrate at this time that the experts, former employees of Carnival, have any confidential or privileged information which they can or have revealed to the Romeros' counsel.
In the lawsuit below, the Romeros sued Carnival for damages they claim to have suffered caused by an incident in January of 1997, when Samantha was sexually assaulted. They allege that Samantha and Emilio were both drugged by an employee of Carnival, while they were passengers aboard Carnival's cruise ship, Fascination. During discovery, the Romeros identified Ross Jamerson and Charles Harris as experts they intended to call to testify at trial. Both men previously worked for Carnival as chief security officers.
Carnival filed a motion for protective order and a stay, arguing Jamerson and Harris had investigated similar claims against Carnival in connection with lawsuits while employed by Carnival and that they possessed information protected by the work product doctrine and attorney-client privilege, as well as trade secret information. Carnival also filed a motion to disqualify Jamerson and Harris from testifying and to disqualify the Romeros' attorney because he had access to such privileged information from Jamerson and Harris.
In support of the motions, Carnival presented an affidavit executed by its claims adjuster. The affidavit stated that Jamerson left Carnival's employment in August 1996, and Harris left in March 1992. Both men had been involved in investigating, evaluating and defending against passenger and crew claims, at the direction of counsel and in anticipation of litigation. Further, Carnival asserted that both men are familiar with confidential practices and procedures used by it in evaluating, analyzing and defending claims, and knew title references to documents in Carnival's possession, the contents of which were privileged.
In his affidavit filed in opposition to the motions, Harris[1] stated he had investigated similar cases for Carnival, at the request of the staff captain, but he had never initiated *692 investigations at the request of Carnival's attorneys, he had never spoken with any attorney during any investigation, and he was never instructed to prepare anything in anticipation of litigation. He merely turned over his investigation reports to the captain, and those reports were open records, included on the ship's logs and reported to public agencies. Harris further asserted he was not involved in making security policy or asked to make management level decisions, or even advised of such decisions. He denied any trade secrets were involved in his duties, stating that his job was merely to follow the Coast Guard guidelines for security. He also denied Carnival had ever communicated to him any policy of a management-developed method to prevent or investigate rapes on board cruise ships.
The trial judge denied Carnival's motion to disqualify. At the hearing, the judge indicated that in the absence of any confidentiality agreement between Carnival's former employees and itself, no breach of confidentiality had been established. Further, the court pointed out that knowledge of the existence of documents is not necessarily privileged, even though the documents themselves may be privileged. The court did not make any rulings concerning the admissibility or discoverability of the content of documents themselves.
Orders disqualifying or refusing to disqualify counsel are generally reviewable by certiorari. See, e.g., Double T Corp. v. Jalis Development, Inc., 682 So.2d 1160 (Fla. 5th DCA 1996) (certiorari granted and order denying motion to disqualify counsel quashed); Arthur v. Gibson, 654 So.2d 983 (Fla. 5th DCA 1995) (appeal of order denying disqualification of counsel treated as certiorari and denied); Tuazon v. Royal Caribbean Cruises, Inc., 641 So.2d 417 (Fla. 3d DCA 1994) (certiorari review of order disqualifying attorney denied, as disqualification based on attorney's access to opponent's confidential information was justified). In Arthur v. Gibson, this court held that a trial court can disqualify an attorney from representing a party if the representation will deprive the other party litigants of an impartial forum. As the Florida Supreme Court pointed out in State Farm Mutual Automobile Insurance Co. v. K.A.W., 575 So.2d 630 (Fla.1991), the legal system cannot function fairly or effectively if an attorney has an informational advantage resulting from a conflict of interest. However, disqualification of a party's counsel is an extraordinary remedy and should be resorted to sparingly. See Norton v. Tallahassee Memorial Hospital, 689 F.2d 938 (11th Cir.1982); General Accident Insurance Co. v. Borg-Warner Acceptance Corp., 483 So.2d 505 (Fla. 4th DCA 1986).
Although we have found no Florida cases which consider the disqualification vel non of an expert witness on the ground of privilege and conflict of interest, it follows that such orders should also be reviewable through the certiorari process. See also Roundpoint v. V.N.A., Inc., 207 A.D.2d 123, 621 N.Y.S.2d 161 (N.Y.App.Div.1995) (courts have inherent power to disqualify expert witnesses to preserve the fairness and integrity of the judicial process).
With regard to the disqualification of the Romeros' counsel, Carnival acknowledges that the Florida Supreme Court in H.B.A. Management, Inc. v. Estate of Schwartz, 693 So.2d 541 (Fla.1997), rejected the argument that counsel for one party could not ethically have ex parte contact with a former employee of an adverse party. The court said "[a]n employee's departure terminates the agency or respondeat superior connection that had previously permitted that employee to create liability for her employer or bind or make admissions for that employer." Id. at 546. The court quoted with approval Florida Bar Ethics Opinion 88-14 (Mar. 7,1989), which in turn relied in part on Wright by Wright v. Group Health Hospital, 103 Wash.2d 192, 691 P.2d 564 (1984). The Washington court noted that the purpose for the no communication rule is not to protect a corporate party from revelation of prejudicial facts, but rather to preclude interviewing employees who have authority to bind the corporate party.
Here, Jamerson and Harris are former employees of Carnival and they have no present authority to bind Carnival. Thus, the Romeros' counsel did not violate Florida Rule of Professional Conduct 4-4.2 by contacting *693 them. However, the Florida Supreme Court also said that during such permitted ex parte contact, counsel should make no inquiry into matters which are the subject of the attorney-client privilege. See also ABA Formal Op 91-359 (March 22, 1991). However, in this case, there was no clear showing made that either Jamerson or Harris had access to any attorney-client communications or information.
Carnival also argues that the Romeros' counsel's actions violate the general rule requiring counsel to avoid the appearance of impropriety, because counsel hired the former employees as trial consultants and expertsa step far beyond merely having ex parte contact with them. Carnival explains this action could violate the new Rules of Professional Conduct, although the rules no longer include an express requirement that attorneys avoid the appearance of impropriety. See State Farm Mutual Automobile Ins. Co. v. K.A.W. Carnival argues that the fact that the Romeros' counsel is paying Jamerson and Harris for factual testimony rather than for expert testimony is improper and gives counsel an impermissible informational advantage.
Carnival contends that Rentclub, Inc. v. Transamerica Rental Finance Corp., 811 F.Supp. 651 (M.D.Fla.1992), affirmed, 43 F.3d 1439 (11th Cir.1995), is a controlling precedent. In that case, defendant's counsel hired the plaintiff's former chief financial officer as a trial consultant. The court ruled that counsel's actions violated the requirement that attorneys avoid the appearance of impropriety and it disqualified counsel from the case. The court took note of the fact that defendant's counsel was paying the plaintiff's former employee, causing an appearance of impropriety that counsel had induced the employee to disclose confidential matters relating to managerial practices, strategies, theories and mental impressions in the litigation, in violation of Florida Rules of Professional Conduct 4-1.6, 4-4.2 and 4-8.4(d). In addition, the court said there was an appearance that the former employee was being paid for factual testimony, as opposed to work as a trial consultant, in violation of Florida Rule of Professional Conduct 4-8.4.
We think Rentclub is distinguishable. First, the Florida Supreme Court has now clarified that ex parte contact with former employees is not prohibited by the Florida Rules of Professional Conduct. See H.B.A. Management. In addition, in Rentclub, the former employee was actually employed by the adverse party at the time the lawsuit was filed, and he was a high ranking officer who had possession of confidential, privileged information relevant to the issues involved in the lawsuit. Further, he had discussed a related suit with his former employer's counsel. In addition, the former employee was a self-proclaimed fact witness who had absconded with confidential documents, which he distributed to his ex-employer's adversaries.
In contrast, in this case, neither Harris nor Jamerson were employed by Carnival at the time of the incident giving rise to the lawsuit. Neither were high-ranking, managerial employees of Carnival. Further, it was not shown that either had access to any confidential or privileged attorney-client or workproduct information. Also, although it appears Harris will be a fact witness at trial, it also appears that he will be used as an expert, based on his experience as a law enforcement officer and security specialist.
We do not think this case is one which requires disqualification based on the attorney having gained access to an adversary party's privileged communications or documents, thereby gaining an informational advantage. The facts are distinguishable from cases in which an attorney hires a secretary or paralegal who previously worked for the opposing party's attorney. See, e.g., Lackow v. Walter E. Heller and Co. Southeast, Inc., 466 So.2d 1120 (Fla. 3d DCA 1985); Williams v. Trans World Airlines, Inc., 588 F.Supp. 1037, 1044 (W.D.Mo.1984). See also In re Complex Asbestos Litigation, 232 Cal. App.3d 572, 283 Cal.Rptr. 732 (1991) (law firm employing paralegal previously employed by opposing law firm is disqualified, absent former employer's consent or an effective screening procedure, where employee had possession of privileged information).
The common elements in these cases is that they all involve employees with confidential, *694 privileged information, and they all relate to employees hired by opposing parties during a single lawsuit. In this case, the trial court concluded that no confidential, privileged information was involved and the former employees were not employed by the opposition at the time the current lawsuit was filed. The lower court's rulings are presumed correct, and we cannot overturn them unless they are clearly erroneous. See, e.g., Florida East Coast Railway Co. v. Dept. of Revenue, 620 So.2d 1051, 1062 (Fla. 1st DCA), rev. denied, 629 So.2d 132 (Fla.1993); Toyota Motor Sales, U.S.A., Inc. v. Superior Court, 46 Cal.App.4th 778, 54 Cal.Rptr.2d 22 (1996).
Furthermore, the burden of establishing the existence of the attorney-client privilege rests on the party asserting the privilege. See Fisher v. United States., 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); Southern Bell Tel. & Tel. Co. v. Deason, 632 So.2d 1377,1383 (Fla.1994). In our view, the trial court did not depart from the essential requirements of law in determining that Harris' and Jamerson's knowledge of the names of reports formulated by Carnival is not privileged information. Although the communications between an attorney and client are privileged, the underlying facts are discoverable. See also Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). If the Romeros had requested the names of reports used by Carnival to document specified information, the response to that question would not be privileged. The names are not privileged, only their content may be.
As to the experts, Carnival asserts that Harris and Jamerson were involved in investigations of similar claims at the direction of Carnival's counsel. Allegedly they gathered information for use by counsel and dealt directly with Carnival's counsel to assist in investigation evaluation and defense of similar claims. They also allegedly spoke with counsel about information they gathered, inconsistencies in evidence and credibility of witnesses. But such communications and the information gathered regarding other incidents do not directly relate to the Romeros' lawsuit. Neither Harris nor Jamerson were employed by Carnival at the time of the Romeros' cruise. Their general familiarity with procedure and security measures is not covered by the attorney-client privilege. That privilege protects communication, not underlying facts.
It was not established that Harris or Jamerson had any information about conversations between Carnival's attorney and anyone else nor did they themselves have any such conversations with an attorney for Carnival. The claims adjuster, in her affidavit, failed to state she was present during any such conversation, and her claim that such a conversation took place is hearsay. No attorney for Carnival presented an affidavit to establish a basis to conclude Harris or Jamerson were participants in any conversation with him or her. In Southern Bell, the Florida Supreme Court held that "to minimize the threat of corporations cloaking information with the attorney-client privilege in order to avoid discovery, claims of the privilege in the corporate context will be subjected to a heightened level of scrutiny."
The work-product privilege asserted by Carnival protects documents and tangible things from discovery when prepared in anticipation of litigation. See Fla. R. Civ. P. 1.280(b)(3). See also Winn-Dixie Stores, Inc. v. Nakutis, 435 So.2d 307 (Fla. 5th DCA 1983), rev. denied, 446 So.2d 100 (Fla.1984) (our system of advocacy mandates that each side should be able to use its sources of investigation without fear of having to disclose all to opponents). However, Carnival did not allege or establish that Harris or Jamerson have possession of any documents or tangible things constituting work product, which were or could be wrongfully disclosed to the Romeros' counsel. Knowledge about general strategies and procedures is not work product.
In Rentclub, one of the violations found was that counsel induced his adversary's former employees, through payments, to disclose strategies, theories and mental impressions in the pending lawsuit and in related litigation. But Harris and Jamerson were not managerial employees of Carnival and they were not familiar with Carnival's attorney's *695 mental strategies and impressions. The prospect of paying Harris for this fact testimony could pose a possible violation under Florida Rule of Professional Conduct 4-3.4. However, any payments made in this case are also intertwined with his expert opinion. Also distinguishing this case from others[2] is the fact that Harris and Jamerson did not sign any confidentiality agreements with Carnival.
We conclude that Carnival in this case failed to carry its burden of establishing that the attorney-client and work-product privileges apply to Harris or Jamerson, and that the trial court departed from the essential requirements of law in denying the blanket, general disqualification. However, should Harris or Jamerson attempt to testify regarding some matter which Carnival claims is privileged, Carnival may object at that time and the trial court may reconsider the disqualification issue, as well as the claim of privilege.
Petition for Writ of Certiorari DENIED.
PETERSON, J., concurs.
DAUKSCH, J., concurs in conclusion only.
NOTES
[1] It appears that Jamerson was removed from the Romeros' list of witnesses.
[2] In re Data General Corp. Antitrust Litigation, 5 Fed. R. Serv.3d 510 (N.D.Cal.1986). See also Wang Laboratories, Inc. v. CFR Associates, Inc., 125 F.R.D. 10 (D.Mass.1989) (former employee who developed software program which was subject or patent litigation could be called as fact witness, but could not be used as an expert, particularly since he had signed confidentiality agreement).