Filed 7/28/23  Laysion v. Macias CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LAYSION, LLC,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GUILLERMO MACIAS et al.,<br><br>    Defendants and Appellants. | B319551<br><br>Los Angeles County<br>Super. Ct. No.<br>21CHCV00339 |

APPEAL from an order of the Superior Court of
Los Angeles County, Stephen P. Pfahler, Judge.  Affirmed.

Fisher, Klein & Wolfe and David R. Fisher for Defendants
and Appellants.

Michael W. Atkin for Plaintiff and Respondent.

————————————

Defendants Guillermo Macias and Colt International Clothing Inc. dba Colt LED (Colt) appeal an order denying their motion to enjoin plaintiff Laysion, LLC (Laysion) from retaining an email communication they contend is protected by the attorney-client privilege. Based on a declaration offered by Laysion's managing member, Yajun Zhang, the trial court found Macias intentionally forwarded and disclosed the communication to Zhang and Laysion, thereby voluntarily waiving the privilege. Substantial evidence supports the court's finding. We affirm.

## FACTS AND PROCEDURAL HISTORY

### 1. *Complaint*

Laysion sued defendants for breach of contract, fraud, and other claims stemming from defendants' alleged agreement to purchase stage lighting equipment from Laysion. Under the alleged agreement, defendants were to make the following installment payments after taking delivery of the equipment: (a) $800,000 to be paid by a series of post-dated checks; and (b) $200,000 to be paid by bank-to-bank wire transfers. The complaint alleges defendants made the required wire transfers and delivered to Laysion seven post-dated checks totaling $800,000. However, when Laysion presented the checks to defendants' bank on the specified dates, the bank rejected the checks due to insufficient funds.

### 2. *Defendants' Motion for Injunction*

After a partially successful demurrer to the first amended complaint, defendants moved for an injunction to compel Laysion to return all copies of an email communication sent from their attorney Bradley Brunon to Colt's president, Macias. As part of their motion, defendants also requested an order disqualifying Laysion's counsel from the litigation. They argued the Brunon

2

email had been inadvertently forwarded to Laysion, and Laysion had improperly used the email in the pending litigation despite defendants' efforts to claw it back.

Macias offered a supporting declaration. He said Brunon had been defendants' attorney for about 20 years and he had always "intended to keep [his] communications with Mr. Brunon confidential and protected by the attorney-client privilege." He had received the email from Brunon in connection with consulting the attorney about acquiring lighting equipment from Laysion. A redacted copy of the email attached as an exhibit to Macias's declaration showed it had been sent from the email address "brunonlaw@verizon.net" and included a signature block for the "Law Office of Bradley Wm. Brunon." Macias acknowledged the email "came to be forwarded to Zhang's email address," but he maintained he had "no recollection of forwarding any emails from Mr. Brunon to Zhang." If he "did in fact forward the email to Zhang," Macias declared, "it would have been unintentional and inadvertent."

Defendants' litigation counsel, David Fisher, offered a declaration describing his efforts to claw back the Brunon email. Fisher said Laysion had attached the email as an exhibit to its first amended complaint and then "relied" on the email in its opposition to defendants' demurrer. Three days after Laysion filed its opposition, Fisher emailed plaintiff's counsel to notify him of the email's privileged nature and to request return of "all materials in his possession that might be considered attorney-client communications." According to Fisher, Laysion's counsel refused to return the Brunon email, stating only that Laysion "disagreed" with defendants' "analysis."

### 3.    *Laysion's Opposition*

Laysion opposed the motion, arguing defendants voluntarily waived the privilege when Macias forwarded the email to Zhang.

Zhang offered a supporting declaration. According to Zhang, in "late 2018 [to] early 2019," Macias special ordered 500 units of lighting equipment, at a price of $2,000 per unit, and "verbally promised to pay cash in full against invoice upon delivery." Laysion completed the order and shipped the equipment from its factory in China on March 30, 2019, with a scheduled arrival date in the Port of Los Angeles on April 29, 2019.

On April 23, 2019, Macias informed Zhang that he could not pay upon delivery and asked Zhang for "terms that included two installment payments." At Macias's request, Zhang provided an invoice for 200 units of the equipment for the first installment payment. Macias told Zhang the invoice "had to be submitted to Bradley Brunon for his approval" and he "did not have authority to make such a payment without Bradley Brunon's approval."

On April 26, 2019, Zhang and Macias had a face-to-face meeting at Macias's office to discuss payment terms. According to Zhang, Macias said he could not make the invoiced installment payment, but he had "recently discussed the timing of payment with Bradley Brunon and Mr. Brunon had approved a different payment schedule" consisting of two $500,000 installments on May 19, 2019 and June 19, 2019. Zhang said Macias then "forwarded Mr. Brunon's email . . . to me." Macias told Zhang his "purpose in forwarding Mr. Brunon's email was to confirm that Mr. Brunon was aware of the obligation to pay for the Equipment, and to confirm when payment would be made."

4

Macias reiterated that "Mr. Brunon's authorization was required to pay for the Equipment."

Zhang received the forwarded email within a minute and began reading it on his mobile phone. Macias waited for Zhang to finish reading, then urged Zhang to accept the new payment schedule. According to Zhang, following some discussion, he "reluctantly agreed, and verbally stated [his] acceptance to Mr. Macias as [they] sat in [Macias's] office." Zhang said the Brunon email was the "only . . . written evidence of [Laysion's] agreement with Mr. Macias regarding payment," and he had "received no other written confirmation of the payment schedule" that the parties had agreed to during the meeting.

Laysion's counsel, Michael Atkin, offered a declaration responding to defense counsel's account of the privilege dispute. Atkin declared that, by examining the "format" of the email correspondence he received from his client, he had "reasonably ascertained that the Brunon Email was not inadvertently provided to plaintiff, but rather forwarded by Defendant Macias in the course of business negotiations with plaintiff." He said he had spoken with defense counsel at least three times regarding "the privilege issue," but their discussions regarding privilege and waiver were "inconclusive."

### 4. *Defendants' Reply*

In reply, defendants asserted Zhang's declaration was false. They maintained it was "utterly irrational" that Macias would have "forward[ed] his counsel's [e]mail as a foundational basis for [an] offer" and it was completely implausible that Zhang would have accepted the offer without confirming the agreement by email or "other form of correspondence." The absence of "such follow-up or confirming email," defendants argued, was itself

5

"evidence that the communications between Macias and Zhang did not take place as [Zhang] asserted."

In a second supporting declaration, Macias denied that he had ordered the "large quantities" of lighting equipment stated in Zhang's declaration. He also denied that he had asked to make installment payments or that he had requested an invoice for 200 units. He said he never advised Zhang that he lacked authority to make payments without Brunon's approval, reiterating that Brunon had been his and Colt's attorney for 20 years. He declared Brunon was "not an owner in Colt in any manner," nor did Brunon have "control over the finances, management, or overall decision making of Colt."

Macias did not deny meeting with Zhang at his office on April 26, 2019, but he maintained he would have had "no reason" to make any of the statements attributed to him in Zhang's declaration. He likewise said he "would have no reason to have forwarded the [Brunon email] to Zhang." Because he "had the ability to confirm or reject a transaction on behalf of Colt," Macias said Zhang's assertion that he forwarded the email to confirm Brunon was aware of the obligation to pay for the equipment was "false."

### 5. *The Trial Court's Ruling*

The trial court denied defendants' motion, concluding Macias voluntarily waived the attorney-client privilege by intentionally forwarding the Brunon email to Zhang. Without examining the contents of the email, the court found "the Zhang declaration specific and credible for purposes of establishing waiver . . . when weighed against the Macias declarations."[1]

---

[1] Defendants objected to peripheral portions of the Zhang declaration—e.g., regarding shipping/arrival dates and the

6

Regarding disqualification, the trial court observed disqualification is " ' "proper as a prophylactic measure to prevent future prejudice to the [privilege holder] from information the attorney should not have possessed." ' "  Because Macias made an "intentional waiver" and there was no "actual impact" from Laysion's failure to notify defendants of what amounted to a voluntary disclosure, the court concluded there was no basis to disqualify Laysion's counsel or to impose an injunction.

**DISCUSSION**

**1.** ***Substantial Evidence Supports the Trial Court's Waiver Finding***

"The attorney-client privilege is a legislative enactment, which courts have no power to expand or limit by creating exceptions." (*McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1100 (*McDermott*), citing *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 739 (*Costco*).)  Subject to certain statutory exceptions, "the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer."  (Evid. Code, § 954.)[2]

_____

rejection of postdated checks by defendants' bank—on lack of foundation and lack of personal knowledge grounds.  However, defendants did not object to Zhang's account of the critical April 26, 2019 meeting where Macias forwarded the Brunon email to Zhang.  Accordingly, we need not entertain defendants' argument that the trial court abused its discretion by rejecting their evidentiary objections.  Even if the objections should have been sustained, it is not reasonably probable that defendants would have achieved a more favorable outcome.  (See *Poniktera v. Seiler* (2010) 181 Cal.App.4th 121, 142.)

[2]     Statutory references are to the Evidence Code.

7

Section 952 defines a " 'confidential communication between client and lawyer' " as "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted."

The attorney-client privilege may be waived, but only by the holder of the privilege. (*McDermott, supra,* 10 Cal.App.5th at p. 1101; *DP Pham LLC v. Cheadle* (2016) 246 Cal.App.4th 653, 668 (*DP Pham*).) Under section 912, a waiver results when the holder of the privilege, without coercion, (1) discloses a significant part of the communication, or (2) consents to the disclosure made by anyone else. (§ 912, subd. (a).)

Although section 912 declares that "any uncoerced 'disclosure' creates a waiver, courts have consistently held that inadvertent disclosures do not." (*Newark Unified School Dist. v. Superior Court* (2015) 245 Cal.App.4th 887, 900; *McDermott, supra,* 10 Cal.App.5th at p. 1101.) As our Supreme Court explained, "the disclosure contemplated in Evidence Code section 912 [requires] some measure of choice and deliberation on the part of the privilege holder" amounting to a "voluntary and knowing disclosure" to waive privilege. (*Ardon v. City of Los Angeles* (2016) 62 Cal.4th 1176, 1188–1189 (*Ardon*).)

"The privilege holder's characterization of his or her intent in disclosing a privileged communication is an important consideration in determining whether the holder waived the privilege, but is not necessarily dispositive. [Citation.] When

8

determining whether an inadvertent disclosure waived the attorney-client privilege, a trial court must examine both the subjective intent of the privilege holder and any manifestation of the holder's intent to disclose the information." (*McDermott, supra,* 10 Cal.App.5th at pp. 1101–1102, citing *Ardon, supra,* 62 Cal.4th at pp. 1190–1191.)

The substantial evidence standard governs our review of the trial court's waiver determination under section 912. (*McDermott, supra,* 10 Cal.App.5th at pp. 1101–1102.) " ' "When the facts, or reasonable inferences from the facts, shown in support of or in opposition to the claim of privilege are in conflict, the determination of whether the evidence supports one conclusion or the other is for the trial court, and a reviewing court may not disturb such finding if there is any substantial evidence to support it." ' " (*DP Pham, supra,* 246 Cal.App.4th at p. 664.) Consistent with these principles, we must defer to the trial court's credibility findings when witnesses offer conflicting accounts, and this " 'is true whether the trial court's ruling is based on oral testimony or declarations.' " (*Hiott v. Superior Court* (1993) 16 Cal.App.4th 712, 717 (*Hiott*), quoting *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479.)

Substantial evidence supports the trial court's determination that Macias intentionally waived the attorney-client privilege with respect to the Brunon email. Zhang offered a declaration, under penalty of perjury, recounting a face-to-face meeting with Macias, during which Macias voluntarily forwarded the Brunon email to Zhang for the stated purpose of persuading Zhang to accept an arrangement that would allow Colt to take delivery of the equipment on a deferred payment schedule. According to Zhang, Macias watched Zhang receive the email

9

and read it on his mobile phone before again urging Zhang to accept the arrangement.  For his part, Macias offered a declaration acknowledging he may have been at his office when Zhang said the meeting occurred, but he denied any recollection of forwarding the email to Zhang or that he would have had any reason to forward Zhang the Brunon email as Zhang claimed.  Inasmuch as the declarations were in conflict, the trial court resolved the differing accounts in favor of Zhang, expressly finding "the Zhang declaration specific and credible for purposes of establishing waiver . . . when weighed against the Macias declarations."  Because the Zhang declaration supports the trial court's determination, we are not authorized to second guess its resolution of the conflicting evidence.  (*DP Pham, supra,* 246 Cal.App.4th at p. 664; *Hiott, supra,* 16 Cal.App.4th at p. 717.)

Defendants' objections to the trial court's waiver finding ignore our governing standard of review.  Defendants contend Zhang's declaration is "self-serving," but that argumentative characterization was for the trial court to assess—it is not a proper ground for a reviewing court to disregard evidence that the fact finder credited.  Defendants also argue Zhang's narrative is "not plausible" and "no waiver should have been found" because "neither [Laysion] nor Zhang ever wrote back to confirm the alleged oral agreement, even though Zhang claims that he was sitting right next to Macias."  But again, defendants' avowed incredulity over Zhang's account is not a permissible basis for an appellate court to invade the exclusive province of the trial court to determine the credibility of witnesses.  (See *People v. Maury* (2003) 30 Cal.4th 342, 403; *People v. Dees* (1972) 27 Cal.App.3d 922, 926.)

10

Our conclusion is consistent with *McDermott*. The trial court in that case found the plaintiff did not waive the attorney-client privilege when he "inadvertently and unknowingly" forwarded a confidential email he received from his personal attorney to his sister-in-law, who, along with other members of the family, was involved in a probate dispute over a multimillion-dollar investment portfolio that belonged to plaintiff's late-wife. (*McDermott, supra,* 10 Cal.App.5th at pp. 1091, 1093–1095.) On appeal, the defendants argued the trial court erred by " 'treat[ing] [the plaintiff's] own post-hoc characterization of his intent as dispositive, while ignoring (or declining to consider) the objective, contemporaneous evidence of [the plaintiff's] intent' " to forward the email and waive the privilege. (*Id.* at p. 1102.) The *McDermott* court rejected the argument, concluding it "mischaracterize[d] the trial court's ruling and ignore[d] the substantial evidence supporting the court's conclusion [the plaintiff] did not waive the privilege." (*Ibid.*) Specifically, the trial court "cited [the plaintiff's] 'unequivocal[ ]' testimony that he did not intend to forward the [privileged] e-mail to [his sister-in-law], and he did not know how it happened." (*Ibid.*) Although other evidence suggested the plaintiff may have intentionally made the disclosure to help mediate the dispute, the *McDermott* court observed that evidence at most "create[d] a conflict . . . or support[ed] additional inferences the trial court could have drawn," but "the governing substantial evidence standard of review require[d] [the reviewing court] to resolve all conflicts and draw all reasonable inferences from the evidence in favor of the trial court's order." (*Id.* at pp. 1104–1105.)

The same is true here. Although Macias's declaration or defendants' implausibility argument could have supported

11

a finding that Macias did not intentionally waive the attorney-client privilege as Zhang claimed, neither *required* the trial court to reach that conclusion given Zhang's declaration, under oath, that Macias voluntarily forwarded the Brunon email. Under the substantial evidence standard of review, defendants have not satisfied their burden to demonstrate reversible error. (See *McDermott, supra,* 10 Cal.App.5th at p. 1106.)

**2.** ***The Trial Court Reasonably Exercised Its Discretion to Deny Defendants' Request to Disqualify Laysion's Counsel***

The trial court denied defendants' request to disqualify Laysion's counsel, reasoning Macias's voluntarily disclosure of the Brunon email negated any appropriate ground for disqualification. Defendants contend the court erred. They argue common law and ethical rules requiring opposing counsel to refrain from examining plainly privileged materials apply regardless of whether there has been an inadvertent disclosure, and disqualification is therefore mandated to the extent Laysion's counsel used the privileged document in litigation before consulting the trial court to resolve the privilege dispute. (See *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, 656–657 (*State Fund*); *McDermott, supra,* 10 Cal.App.5th at p. 1113.) While we agree certain ethical obligations attached once Laysion's counsel determined (or should have determined) the Brunon email was privileged, we conclude the trial court reasonably exercised its discretion in denying the disqualification request.

"A disqualification motion involves a conflict between a client's right to counsel of his or her choice, on the one hand, and the need to maintain ethical standards of professional

12

responsibility, on the other." (*Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 47 (*Clark*), citing *City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 846.) "Protecting the confidentiality of communications between attorney and client is a fundamental principle of our judicial process and an opposing attorney who breaches that principle may be disqualified from further participation in the litigation." (*McDermott, supra,* 10 Cal.App.5th at pp. 1119–1120; see *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, 819 (*Rico*).) Nevertheless, notwithstanding the sanctity of the attorney-client privilege, "whenever a lawyer seeks to hold another lawyer accountable for misuse of inadvertently received confidential materials, the burden must rest on the complaining lawyer to persuasively demonstrate inadvertence. Otherwise, a lawyer might attempt to gain an advantage over his or her opponent by intentionally sending confidential material and then bringing a motion to disqualify the receiving lawyer." (*State Fund, supra,* 70 Cal.App.4th at p. 657.)

In an effort to balance these competing concerns, the court in *State Fund* articulated a standard to govern the ethical obligations of an attorney upon receiving another party's attorney-client privileged materials:

> "When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining

13

the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged.  The parties may then proceed to resolve the situation by agreement or may resort to the court for guidance with the benefit of protective orders and other judicial intervention as may be justified." (*State Fund, supra,* 70 Cal.App.4th at pp. 656–657.)

In *Rico*, our Supreme Court adopted the *State Fund* rule as "a fair and reasonable approach" that "addresses the practical problem of inadvertent disclosure" in the context of modern discovery practices.  (*Rico, supra,* 42 Cal.4th at pp. 817–818.)  Our high court recognized the *State Fund* rule establishes "an objective standard" that asks "whether reasonably competent counsel, knowing the circumstances of the litigation, would have concluded the materials were privileged, how much review was reasonably necessary to draw that conclusion, and when counsel's examination should have ended." (*Rico,* at p. 818.)

Under the *State Fund* rule, as adopted in *Rico*, " ' "[m]ere exposure" ' to an adversary's confidences is insufficient, standing alone, to warrant an attorney's disqualification." (*Rico*, *supra*, 42 Cal.4th at p. 819, citing *State Fund, supra,* 70 Cal.App.4th at p. 657.)  As the *State Fund* court expressly recognized, " '[p]rotecting the integrity of judicial proceedings does not require so draconian a rule [because it] would nullify a party's right to representation by chosen counsel any time inadvertence or devious design put an adversary's confidences in an attorney's mailbox.' " (*State Fund,* at p. 657; *Rico,* at p. 819.)  Nonetheless,

14

" 'in an appropriate case, disqualification might be justified if an attorney inadvertently receives confidential materials and fails to conduct himself or herself in [accordance with his or her *State Fund* duties], assuming *other factors* compel disqualification.' " (*Rico,* at p. 819, quoting *State Fund,* at p. 657, italics added; see *McDermott, supra,* 10 Cal.App.5th at p. 1120.)

In assessing whether disqualification is warranted, the critical question " 'is whether there exists a genuine likelihood that the status or misconduct of the attorney in question will affect the outcome of the proceedings before the court.' " (*McDermott*, *supra,* 10 Cal.App.5th at p. 1120; see also *id.* at p. 1124.) "[D]isqualification is proper as a prophylactic measure to prevent future prejudice to the [privilege holder] from information [opposing counsel] should not have possessed." (*Clark, supra,* 196 Cal.App.4th at p. 55; *McDermott,* at p. 1124.) "A trial court, however, may not order disqualification ' "simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings." ' " (*McDermott,* at p. 1120.)

"We review the court's disqualification order for abuse of discretion." (*Rico, supra,* 42 Cal.4th at p. 819.) " 'An abuse of discretion may be found only if " 'no judge could have reasonably reached the challenged result. [Citation.] "[A]s long as there exists 'a reasonable or even fairly debatable justification, under the law, for the action taken, such action will not be . . . set aside . . . .' " ' " ' [Citation.] We may not substitute our judgment for that of the trial court, and provided the trial court properly applied the law, we may reverse the trial court's exercise of its discretion only when the facts required the trial court to reach a different result." (*McDermott, supra,* 10 Cal.App.5th at p. 1124.)

Relying on *McDermott*, defendants argue Laysion's counsel violated his ethical obligations under *State Fund* by "personally determin[ing] that the privilege had been waived," while "employing the clearly privileged document for litigation purposes." In *McDermott*, the defendants' counsel challenged the trial court's disqualification order, arguing it was not "reasonably apparent" that a privileged email had been "inadvertently disclosed" by the privilege holder. (*McDermott, supra,* 10 Cal.App.5th at p. 1110.) The *McDermott* court rejected the argument, holding it would "create an exception that would swallow the *State Fund* rule" to allow "opposing counsel to avoid their *State Fund* obligations any time they can fashion a colorable argument for overcoming the privilege." (*McDermott,* at p. 1113.) The appellate court explained:

> "[A]n attorney's obligation [under *State Fund*] is to review the materials no more than necessary to determine whether they are privileged, and then notify the privilege holder's counsel. At that point, the parties may confer about whether the material is privileged and whether there has been a waiver. If the parties are unable to reach an agreement either side may seek guidance from the trial court. [Citations.] The attorney receiving the material, however, is not permitted to act as judge and unilaterally make that determination." (*Ibid*.)

We agree with the *McDermott* court (and defendants). Regardless of whether there is reason to doubt privileged materials were inadvertently disclosed, an attorney's ethical

16

obligations under *State Fund* attach once counsel knows or should know materials in counsel's possession likely are privileged. At that point, counsel is obligated to notify the presumptive privilege holder and confer about whether the communication is privileged or whether the privilege has been waived. If the parties are unable to reach an agreement, the dispute must be presented to the court for resolution before counsel takes any further action contrary to the confidentiality of the presumptively privileged material. This is the "objective standard" our Supreme Court endorsed in *Rico*. (*Rico, supra,* 42 Cal.4th at p. 818.)

Here, the trial court found the Brunon email was presumptively privileged—a finding supported by, among other things, the email's signature block which disclosed it had been sent from the "Law Office of Bradley Wm. Brunon." Under *State Fund*, once Laysion's counsel obtained the email and recognized it might be privileged, he had an ethical obligation to notify defendants' counsel and to present the privilege dispute to the court for resolution.

Notwithstanding this transgression, we conclude the trial court reasonably exercised its discretion in denying defendants' request to disqualify Laysion's counsel. As the trial court correctly recognized, disqualification is " 'proper as a prophylactic measure to prevent future prejudice to the [privilege holder] from information the attorney *should not have possessed*,' " and a trial court "may not order disqualification ' "simply to punish a dereliction that will likely have *no substantial continuing effect on future judicial proceedings*." ' " (*McDermott, supra,* 10 Cal.App.5th at p. 1120, italics added.) Here, the court found Laysion's counsel possessed the Brunon email because *Macias*

*intentionally disclosed* it to Zhang. In view of that finding, the trial court reasonably determined there was "insufficient evidence of prejudice," "even assuming a violation of the [*State Fund*] rule," and disqualification would serve only to punish Laysion for a dereliction that threatened no future harm. (See *State Fund, supra,* 70 Cal.App.4th at p. 657 [disqualification is warranted only if the privilege holder can "persuasively demonstrate inadvertence," otherwise a party "might attempt to gain an advantage over his or her opponent by intentionally sending confidential material and then bringing a motion to disqualify the receiving lawyer"]; see also *Rico, supra,* 42 Cal.4th at p. 819; *McDermott,* at p. 1120; *Clark, supra,* 196 Cal.App.4th at p. 55.)

Defendants do not identify any future prejudice they will suffer. Instead, they attempt to bootstrap opposing counsel's infraction to attack the trial court's waiver finding by arguing Laysion's possession of the Brunson email "so tainted" the proceedings that it made a "reasonable inquiry" into the privilege dispute "impossible." In defendants' telling, Laysion's counsel "employed" the Brunon email to "fashion" the Zhang declaration by "clearly and cleverly" "mimic[ing]" the email's contents to present a "persuasive" account of "the context" in which Macias "allegedly" sent it to Zhang. Consequently, defendants contend Laysion effectively caused the court to base its credibility and waiver determinations on the contents of the Brunon email, in violation of the settled prohibition against reviewing the contents of a confidential communication to determine whether the attorney-client privilege protects it. (See § 915, subd. (a) ["the presiding officer may not require disclosure of information claimed to be privileged . . . in order to rule on the claim of

18

privilege"]; *Costco, supra,* 47 Cal.4th at p. 736 & fn. 4; *DP Pham, supra,* 246 Cal.App.4th at p. 659 [a court "may not review the contents of a communication to determine whether the attorney-client privilege protects that communication"].)

Defendants' argument begs the question. The trial court could not have based its credibility determination on some purported consistency between the Brunon email and Zhang's account, unless the court had in fact reviewed the email's contents to ascertain the purported consistency. But the trial court expressly repudiated that necessary assumption undergirding defendants' argument. As the court explained in its written order, a court is "precluded" from examining the contents of a confidential communication to determine if it is privileged, and "[t]he court also finds no reason to examine the [Brunon] e-mail contents for purposes of determining a waiver, even if allowed." Because the basis for its waiver finding—Zhang's account of his meeting with Macias—exclusively concerned "the negotiations and e-mail exchange . . . between the parties [Zhang and Macias] themselves," the court emphasized "the conduct of Brunon" had "[n]othing" to do with its "consideration of the waiver" issue.

The record does not support defendants' contention that opposing counsel's dereliction prevented the trial court from engaging in a "reasonable inquiry." The court did not abuse its discretion in denying the disqualification request.

19

## DISPOSITION

The order is affirmed.  Plaintiff Laysion is entitled to costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

LAVIN, Acting P. J.

HEIDEL, J.*

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.