NIKKAL INDUSTRIES, LTD., Plaintiff,

v.

SALTON, INC., Defendant.

No. 87 Civ. 6092 (CHT).

United States District Court,
S.D. New York.

May 11, 1988.

Ginsburg, Feldman and Bress by Mary Helen Sears, Jonathan Ginsburg, Beth A. Rosenbloom, Washington, D.C., Lynch, Rowin, Burnbaum & Crystal, P.C. by Mark Rowin, New York City, for plaintiff.

Dewey, Ballantine, Bushby, Palmer & Wood (Sanford M. Litvack, Jonathan W. Miller, David A. Koenigsberg, Caroline Silk, of counsel), New York City, for defendant.

## OPINION

TENNEY, District Judge.

This case involves advertising claims for home ice cream makers. Plaintiff Nikkal Industries, Ltd. ("Nikkal") filed a complaint against defendant Salton, Inc. ("Salton") alleging that defendant's advertising violated the Lanham Act, 15 U.S.C. § 1125 (1982 & Supp.1987), and sections 349 and 350 of the New York General Business Law (McKinney 1968 & Supp.1987). Defendant made counterclaims asserting that Nikkal's advertising violated the same statutory provisions. Nikkal's complaint seeks damages, and preliminary and permanent injunctive relief. Judge Leonard B. Sand previously ruled that Nikkal was not entitled to any preliminary relief. Nikkal then made a motion to disqualify a defense witness who may testify as an expert. The issue was sent to Magistrate James C. Francis IV for a Report and Recommendation ("Report"). In the interim, the case was transferred to this court. Magistrate Francis recommends that Nikkal's motion be denied. For the reasons set forth below, the court finds that Magistrate Francis's Report was correct. Accordingly, Nikkal's motion is denied.

---

1. The Transcript refers to the proceedings at the evidentiary hearing held on March 3, 1988 presided over by Magistrate Francis. Parts of the hearing were held *in camera* because Nikkal claimed the testimony was confidential.

## BACKGROUND

In early October 1987, Beth Rosenbloom ("Rosenbloom"), an attorney for Nikkal, contacted Dr. Robert C. Sorensen ("Sorensen") in reference to this litigation. Transcript[1] ("Tr.") at 10–11. Sorensen is a market research expert. Tr. at 6–8. Rosenbloom's objective was to ascertain whether Sorensen would be interested in becoming employed by Nikkal as an expert witness.[2] Tr. at 11. Rosenbloom also made it clear that Nikkal was contacting other possible experts as well. *Id.* Shortly thereafter, Rosenbloom telephoned Sorensen again and arranged for a meeting to take place. *Id.* Sorensen voiced concern that his advice would go uncompensated and therefore requested remuneration. Tr. at 11–12, 22–23. Rosenbloom agreed to pay Sorensen for his attendance at the meeting and forwarded various publicly available documents to him. Tr. at 11–13.

On October 13, 1987, Sorensen attended the meeting which was held at the offices of Nikkal's counsel. Those present included three of Nikkal's attorneys and its vice president for marketing, Charles J. Johnson ("Johnson"). Johnson furnished Sorensen with information about Nikkal useful in conducting a market survey. Tr. at 49–50. He also gave to Sorensen information concerning marketing and sales methods which he considered privileged. Tr. at 54–56. Sorensen advised Nikkal on how to perform market research and provided Nikkal with an estimate of the cost. Tr. at 37–38. In addition, some of the contested advertising was displayed at the meeting. Tr. at 64. The remainder of the meeting involved discussions of the essential issues of the case, and potential techniques for conducting a market survey. Tr. at 14–16, 26, 35–42. The meeting lasted about ninety minutes. Tr. at 16, 49. At the conclusion, Nikkal informed Sorensen that if they wished to utilize his services they would contact him within a couple of days. Tr. at 16.

---

2. Sorensen had worked in the past for both Nikkal and Salton. Tr. at 24, 27–28.

After waiting ten days, Sorensen called Jonathan Ginsburg ("Ginsburg"), an attorney for Nikkal, and inquired about the status of his relationship with Nikkal. Ginsburg told Sorensen that Nikkal had retained another expert. Tr. at 16–17. Ginsburg offered to pay Sorensen for his attendance at the meeting and for any time spent reviewing the case. Tr. at 19. Sorensen declined to accept the offer since he felt that his relationship with Nikkal was insufficient to justify compensation. *Id.* This final contact between Sorensen and Nikkal ended with Ginsburg suggesting that Sorensen might be retained in the future. Tr. at 18.

On November 24, 1987, David Koenigsburg ("Koenigsburg"), an attorney for Salton, telephoned Sorensen regarding his possible retention by Salton as an expert witness. Sorensen informed Koenigsberg of his prior contact with Nikkal in regard to this litigation. Tr. at 8. A few days later Salton contacted Sorensen and both sides entered into an oral agreement. Tr. at 9. Sorensen's primary duty was to evaluate the reliability of any market research techniques offered at trial by Nikkal. Tr. at 9–10.

## DISCUSSION

### A. *Standard of Review*

█ Plaintiff argues that "[a]s is well settled, the Magistrate's fact findings are fully reviewable by the court." Plaintiff's Memorandum of Objections ("Pl.Mem.") at 11. This mistaken assertion is rejected by the court. In reviewing Magistrate Francis's findings, the court will be guided by the Judicial Procedure Act, 28 U.S.C. § 636 (1986), which directs that one of two standards are applicable in the instant situation. Either a de novo review or a clearly erroneous standard will be employed. The standard depends on whether the issue decided by the magistrate is dispositive or non-dispositive.

A district judge is authorized under 28 U.S.C. § 636(b)(1) to have a magistrate decide any pretrial matter except certain specified motions. These motions are ones deemed by Congress to be dispositive. *See*

*United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Under Section 636(b)(1)(A) the magistrate's decision does not dispose of the litigation. As a result, Congress vested the magistrate's findings with a substantial degree of authority. Therefore, a district court will only reverse a magistrate's findings if they are "clearly erroneous or contrary to law."

However, if the issue referred to a magistrate is made pursuant to section 636(b)(1)(B), then the matter is deemed a dispositive one and the court's review is governed by a de novo standard. A de novo review involves the court making its own determination based upon "[the] ... record [developed before the magistrate], without being bound to adopt the findings and conclusions of the Magistrate." *Aluminum Co. of America v. United States E.P.A.,* 663 F.2d 499, 502 (4th Cir.1981), *quoting* House Report No. 94–1609, P.L. 94–577, *reprinted at* [1976] U.S.Code Cong. & Admin.News 6162. *See Raddatz,* 447 U.S. at 675, 100 S.Ct. at 2412. *See also Baldwin Hardware Corp. v. Harden Inds.,* 663 F.Supp. 82, 84 (S.D.N.Y.1987).

The matter referred to Magistrate Francis was non-dispositive and therefore a clearly erroneous standard governs. "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Agricultural Services Ass'n v. Ferry-Morse Seed Co.,* 551 F.2d 1057, 1071 (6th Cir. 1977), *quoting United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed.2d 746 (1948). Consistently, it has been held that a magistrate's report resolving a discovery discourse between litigants should be afforded substantial deference and be overturned only if found to be an abuse of discretion. *See Empire Volkswagen, Inc. v. World Wide Volkswagen Corp.,* 95 F.R.D. 398, 399 (S.D.N.Y.1982), *judgment aff'd,* 814 F.2d 90 (2nd Cir.1987); *Detection Systems, Inc. v. Pittway Corp.,* 96 F.R.D. 152, 154 (W.D. N.Y.1982). Accordingly, the court will not overturn Magistrate Francis's Report un-

less the ruling is clearly erroneous or contrary to law.

## B. *Alleged Errors*

### 1. *Factual*

Magistrate Francis found that Nikkal's meeting with Sorensen amounted to no more than "a comprehensive employment interview." Report at 6. Furthermore, "counsel did not supply Dr. Sorensen with data specific enough for him to form even a preliminary view of the merits of the litigation." *Id.* "Finally, since Dr. Sorensen was not retained by Nikkal, any disclosure to him of plaintiff's legal theories constituted a waiver of protection otherwise afforded to work product." Report at 9.

Nikkal vehemently opposes the Report for the following reasons. First, the Magistrate erred in concluding that Nikkal informed Sorensen that his services were not desired. Second, the Magistrate used an "unseemly" approach by presuming he had to resolve a credibility contest between both sides. Third, the Magistrate erred in finding that the consultation did not involve privileged communications. Fourth, the Magistrate was wrong in finding that Nikkal did not retain Sorensen.

### (a) *Alleged error regarding Nikkal's intent to hire Sorensen*

■ Nikkal's contention is rejected because there was evidence to support the Magistrate's finding. Tr. at 16–18, 24, 32. In addition, it is beyond question that Nikkal never in fact utilized Sorensen's services. Tr. at 17–18. During the first and final communication subsequent to the meeting, Sorensen was told that Nikkal had hired someone else. Tr. at 17. After being so informed, Sorensen discarded the materials which Nikkal had furnished him. *See* Affidavit of Robert C. Sorensen, ¶ 19, sworn to February 11, 1988 attached to Exhibit ("Exh.") E of Pl.Mem. Consequently, Magistrate Francis's finding was supported by the evidence.

### (b) *The Magistrate's weighing of credibility*

■ The court will not dwell for any great length upon this contention since it borders on the frivolous. To suggest that Magistrate Francis acted in an unseemly fashion by taking credibility into account is absurd because there were in fact sharply differing versions of what occurred at the meeting. It was for this very purpose, namely to determine whether Nikkal had imparted any privileged information to Sorensen, that Judge Sand referred the matter to Magistrate Francis. Accordingly, Magistrate Francis acted quite reasonably in taking credibility into account.

### (c) *The finding of non-privileged communication*

■ This contention is equally meritless. The court has studied the record and finds that Magistrate Francis had ample familiarity with this litigation in its pretrial stage. The Magistrate presided over various settlement and pretrial conferences. Thus, Magistrate Francis's knowledge of the litigation allowed him to resolve the question of whether the communications between Nikkal and Sorensen were privileged.

### (d) *The finding that Nikkal did not retain Sorensen*

■ There is sufficient evidence in the record to support the Magistrate's finding. Sorensen had emphasized to Nikkal that he wished to be paid for his advice at the meeting. Tr. at 11. This supports the finding that the meeting was a type of informal consultation rather than the commencement of a long term relationship. Moreover, Sorensen continually testified that he was never retained by Nikkal. Tr. at 17–18, 23–24, 29–30. He was in fact told that someone had been hired. Tr. at 17. Sorensen's unrebutted testimony coupled with the complete absence of any evidence to the contrary supports the Magistrate's finding. Accordingly, the court finds that there is evidence in the record to support the finding.

### 2. *Legal Errors*

Having dealt with the factual objections, the court now focuses on the legal objec-

tions. The objections are numerous and can be tersely characterized as Nikkal's assertion that the "Report subverts and perverts the objectives of the rules of law...." Pl.Mem. at 12.

The issue presented is whether a party who consulted with an expert, contemporaneously expressing an interest in possibly retaining him, but not doing so, is entitled to preclude the opposing party from utilizing the expert's testimony based on asserted privilege.

### (a) *Federal or State Law*

■ As an initial matter, the court must determine whether the privilege sought to be invoked by Nikkal is governed by either federal or state law. The complaint herein alleges violation of the Lanham Act as well as pendent state law claims. The dispute over the potential testimony of the expert witness would be relevant to both claims. The Second Circuit has held that in such situations the claimed privilege is controlled by rules of federal rather than of state law. *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987). Therefore, the court will apply federal law to decide whether Nikkal's asserted privilege should be recognized.

It is axiomatic that a privileged communication, even if highly relevant to the litigation, is non-discoverable pursuant to Fed.R. Civ.P. ("Rule") 26(b). Under Rule 26(b)(1) "[p]arties may obtain discovery regarding any matter, not *privileged,* which is relevant to the subject matter involved in the pending action...." (Emphasis added).

Nikkal argues that the burden falls on Salton to show that privileged information was not communicated at the meeting. Pl. Mem. at 11–12. To the contrary, it is well settled that the party in civil litigation who claims a privilege has the burden of establishing the existence of the privilege. "That burden is not, of course, discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *In re Bonanno*, 344 F.2d 830, 833 (2d Cir.1965). *See* 8 C. Wright & A. Miller, *Federal Practice & Procedure* § 2016 at 126 (1970). Moreover, the party seeking to invoke a privilege has the burden of establishing non-waiver of the privilege. *Id.* One need not show the intent to waive a privilege since a waiver may occur absent intent. *In re Grand Jury Investigation of Ocean Transportation,* 604 F.2d 672, 675 (D.C. Cir.), *cert. denied,* 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979). A legal scholar has stated:

> A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation.

8 Wigmore, *Evidence* § 2327 at 636 (McNaughton rev. 1961). This places the burden of establishing non-waiver squarely on Nikkal.

### (b) *The Asserted Privilege*

■ In considering whether Nikkal is entitled to its claimed privilege, the court will be guided by Supreme Court admonitions on the issue of privilege. In general, testimonial privileges are not looked upon with favor by federal courts. The reluctance to broaden the scope of privilege reflects a strong concern with a fundamental precept of American law. Our system of law recognizes that "the public ... has a right to every man's evidence." *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed.2d 884 (1950). Furthermore, "these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

In reviewing the record there is no evidence that the meeting constituted anything more than an employment style interview. There was a flow of information which was essentially technical. Nikkal itself characterizes the information as technical. Sorensen's "suggestions to plaintiff's counsel were technical and quite specific...." Pl.Mem. at 8 n. 6. Communication based upon technical information as

opposed to legal advice is not considered privileged. *Status Time Corp. v. Sharp Electronics*, 95 F.R.D. 27, 31 (S.D.N.Y. 1982); *Eutectic Corp v. Metco*, 61 F.R.D. 35, 40–41 (E.D.N.Y.1973). This conclusion is particularly appropriate in the instant case since Nikkal has utterly failed to show the court how this technical information is privileged.

■ Nikkal claims that Sorensen should be held to the standard of an attorney.[3] Pl.Mem. at 21–22. The court is cognizant that an attorney-client relationship results when legal advice is sought from a legal adviser. 8 Wigmore, *Evidence* § 2292 (McNaughton rev. 1961). However, there is no evidence that Sorensen offered legal advice of any kind. Whatever association Sorensen had with Nikkal in October of 1987 it was not that of an attorney and client but merely a consultation. Nikkal's allegations amount to little more than bare assertions. None of Nikkal's witnesses at the hearing which occurred a mere five months after the alleged relationship was consummated could identify any legal advice furnished by Sorensen. Therefore, the court concludes that an attorney-client relationship never existed.

■ Finally, the Magistrate found that since Nikkal had decided not to retain Sorensen it waived any right to claim privilege. As mentioned above, Nikkal has the burden of proving non-waiver. Nikkal has failed to meet its burden because it has not brought forth any evidence of non-waiver.

## CONCLUSION

The court finds that there was sufficient evidence to support the Magistrate's factual findings. In addition, the court also finds that the Magistrate's recommendation was not clearly erroneous. The court agrees with Magistrate Francis that the record is void of any evidence that privileged communication was discussed. Ac-

cordingly, the court will not disqualify the defendant's witness.

So ordered.

---

**3.** Yet Nikkal also states "Sorensen is not a lawyer ... and it was *not* his job to opine on the merits of the litigation." Pl.Mem. at 17 n. 9 (emphasis in original). This inconsistency need not be addressed since the record is void of any evidence that privileged information of any type

was discussed at all during the October 13, 1987 meeting. Consequently, regardless of what standard of privilege would apply to Sorensen, the court agrees with Magistrate Francis that no privileged information was divulged at the meeting.