**POPULAR, INC., Plaintiff,**

v.

**POPULAR STAFFING SERVICES, CORP., Defendant.**

**No. CIV. 02–2058(HL).**

United States District Court, D. Puerto Rico.

Jan. 9, 2003.

Roberto C. Quinones–Rivera, Armando Llorens, McConnell Valdes, San Juan, PR, for Popular, Inc., plaintiff.

Karen M. Ocasio–Cabrera, Lespier & Munoz Noya, San Juan, PR, Jorge R. Davila–Alvarado, Cond. Eldorado, San Juan, PR, for Popular Staffing Services, Corp., defendant.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is Plaintiff's Motion to Disqualify Defendant's Expert (Docket 45). Plaintiff Popular, Inc. ("Popular") maintains that Defendant Popular Staffing Services' ("Staffing") expert Luis G. Benabe–Santos should be disqualified as Defendant's expert and barred from communicating with Defendant.

On July 29, 2002, Mr. Benabe met with counsel and a Market Research Project Coordinator for Banco Popular de Puerto Rico to discuss whether Mr. Benabe would have any objection to the use, by Popular, of a brand recall study prepared by his firm. According to Plaintiff, Mr. Benabe was informed of the nature of the controversy between Plaintiff and Defendant, of Plaintiff's view with respect to Defendant's position, and of the use of survey evidence

as part of Plaintiff's strategy. He was told that Plaintiff was considering using his study to corroborate the strength of the "Popular" mark. After the July 29 meeting Plaintiff concluded that Mr. Benabe's study would not add anything material to its case and decided not to use it.

■ Federal courts have the inherent power to disqualify experts, *Campbell Ind. v. M/V GEMINI*, 619 F.2d 24, 27 (9th Cir.1980), although cases that grant disqualification are rare, *English Feedlot, Inc. v. Norden Lab., Inc.*, 833 F.Supp. 1498, 1501 (D.Colo.1993). Initially, the Court points out that this is not a case in which the expert switched sides. If that were the case, "no one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation and had received confidential information from the adverse party pursuant to the earlier retention. This is a clear case for disqualification." *Wang Lab., Inc. v. Toshiba Corp.*, 762 F.Supp. 1246, 1248 (E.D.Va.1991) (citations omitted).

■ In disqualification cases other than those in which the expert clearly switched sides, courts have rejected a "bright-line" rule and have adopted the following test:

First, was it objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed?

Second, was any confidential or privileged information disclosed by the first party to the expert?

*Koch Ref. Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir.1996) (citing *Mayer v. Dell*, 139 F.R.D. 1, 3 (D.D.C. 1991)). Only if the answers to both questions are affirmative should the witness be disqualified. *Mayer*, 139 F.R.D. at 3.

Many courts have also considered a third element: the public interest in allowing or not allowing an expert to testify. *Koch Ref. Co.*, 85 F.3d at 1181 (citing *English Feedlot*, 833 F.Supp. at 1504–5).

■ The party seeking disqualification bears the burden of proving these elements. *Cordy v. Sherwin–Williams Co.*, 156 F.R.D. 575, 580 (D.N.J.1994). First, a court must determine whether the retaining party and the expert had "a relationship which permitted [the retaining party] reasonably to expect that any communication ... would be maintained in confidence by [the expert]." *In re Ambassador Group, Inc. Litigation*, 879 F.Supp. 237, 243 (E.D.N.Y.1994). Courts have found such a relationship to exist when "the record supports a longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of [the retaining party's] modus operandi, patterns of operations, decision-making process, and the like." *Koch Ref. Co.*, 85 F.3d at 1181 (citing *Marvin Lumber Co. v. Norton Co.*, 113 F.R.D. 588, 591 (D.Minn. 1986)).

In contrast, when "the expert met but once with counsel, was not retained, was not supplied with specific data relevant to the case, and was not requested to perform any services, [courts have] found that the evidence supports the finding that the meeting was a type of informal consultation rather than the commencement of a long-term relationship." *Koch Ref. Co.*, 85 F.3d at 1181 (citing *Mayer*, 139 F.R.D. at 3–4); *see also Wang Lab.*, 762 F.Supp. at 1249, n. 5 (collecting cases); *Nikkal Ind., Ltd. v. Salton*, 689 F.Supp. 187, 190 (S.D.N.Y.1988).

In the present case, Plaintiff met with Mr. Benabe to discuss the possibility of using his study as evidence of the strength of the "Popular" mark. Plaintiff informed Mr. Benabe that they intended to retain an

expert who would probably testify about the meaning of his study. Plaintiff did not express to Mr. Benabe any interest in retaining him as the expert. In short, Mr. Benabe met only once with Plaintiff's counsel, was not retained as an expert, nor was he requested to perform any services. Hence, the Court finds that the meeting on July 29 was more of an informal consultation rather than the commencement of a long-term relationship. *See Koch Ref. Co.,* 85 F.3d at 1181. Accordingly, the Court concludes that Plaintiff and Mr. Benabe did not develop a relationship which permitted Plaintiff to reasonably expect that any communication would be maintained in confidence between them.

■ Moreover, assuming *arguendo,* that Plaintiff could prove the first prong by establishing a confidential relationship, the Court believes that it would be difficult for Plaintiff to meet the second prong (*i.e.,* prove that Mr. Benabe received confidential information). Confidential information would include discussion of trial strategies, weaknesses of each side, the role of the witnesses to be hired, and anticipated defenses. *Mayer,* 139 F.R.D. at 4. However, purely technical information is not confidential. *Nikkal Ind.,* 689 F.Supp. at 191–92. While Mr. Benabe was informed of the nature of the controversy in this case, and the use of survey evidence to build the case,[1] Plaintiff's counsel did not spend a considerable amount of time discussing the theory of the case, defenses or other substantial information constituting confidential information.

Lastly, the balancing of competing policy objectives in determining expert disqualification, and the fact that Defendant's are confronted with this motion at the eve of trial, adds further support to the Court's determination against disqualification. "The main policy objectives militating against disqualification are ensuring that parties have access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling." *English Feedlot,* 833 F.Supp. at 1504–5. "Courts have also expressed concern that if experts are too easily subjected to disqualification, unscrupulous attorneys and clients may attempt to create an inexpensive relationship with potentially harmful experts solely to keep them from the opposing party." *Id.* at 1505. Accordingly, courts have considered whether another expert is available and whether the opposing party had time to hire him or her before trial. *Koch Ref. Co.,* 85 F.3d at 1183 (citing *Wyatt v. Hanan,* 871 F.Supp. 415, 422 (M.D.Ala.1994); *Cordy,* 156 F.R.D. at 582).

WHEREFORE, the Court **Denies** Plaintiff's Motion to Disqualify Defendant's Expert.

**IT IS SO ORDERED.**

---

1. See Unsworn Declaration of Ms. Vanessa Seda, Docket 45.