Filed 11/6/13  Hoss v. Hagen CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| DANIEL J. HOSS, SR., et al.,<br><br>        Plaintiffs, Cross-defendants  and Appellants,<br><br>   v.<br><br>CARLIN R. HAGEN et al.,<br><br>        Defendants, Cross-complainants and Respondents. | C071753<br><br>(Super. Ct. No. 51091) |

This road easement dispute has been simmering for over 30 years.  Former Lassen County Superior Court Judge Joseph B. Harvey personally viewed the road in 1981 and entered a judgment decreeing an easement in favor of a dominant parcel and against servient parcels.  The successors-in-interest have not lived harmoniously under that decree, and this appeal will not resolve their differences, as it is an interlocutory appeal from an order declining to disqualify an attorney and expert witnesses.  As we shall

1

explain, the trial court applied the proper legal standards to this dispute and resolved conflicts in the evidence against appellants. Finding no error, we shall affirm.

## BACKGROUND

*The Underlying Dispute*

In 1966, George Nelson, Sr. and his wife deeded 10 acres of the Nelson Ranch to his daughter, Mary Ann (mother of plaintiffs), including access via a then-extant road through what are now four parcels, and deeded the rest of the ranch to his son, George Nelson, Jr. and his wife. A dispute about the road arose, resulting in litigation during which Judge Harvey viewed the road, and ultimately entered a decree in 1981 that did not precisely describe the road easement. (*Clement v. Nelson*, Lassen Co. Super. Ct. No. 14687.) Neither the relevant deeds nor Judge Harvey's judgment are in the record on appeal.[1]

Plaintiffs (sometimes collectively Hoss) now own the dominant parcel, and defendants (sometimes collectively Hagen) own the servient parcels.[2]

_____

[1] Respondents assert without reference that the relevant deed granted "'the right to use the road as it presently exists[.]'" We normally disregard factual assertions unsupported by record citations. (See *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 (*Duarte*).) However, there is evidence in the record showing that Judge Harvey found the deeded easement consisted of the actual road then in use. That would not be an unusual decree for a rural road. (See *County of Colusa v. Charter* (1989) 208 Cal.App.3d 256 [public road width was the roadway actually in use, not county-resolution or state-law standard width].) It appears the road was later slightly re-routed, by mutual consent, which is commonly done on rural roads.

We note that plaintiffs, as the appellants, bore the burden to provide an adequate record on appeal. (*Mountain Lion Coalition v. Fish & Game Com.* (1989) 214 Cal.App.3d 1043, 1051, fn. 9.) "To the extent the record is incomplete, we construe it against [them]." (*Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 498 (*Sutter*).)

[2] Plaintiffs are Daniel Hoss and Anna Vermillion-Hoss. Defendants are Carlin R. and Sheri Hagen, Gregory K. and Cynthia L. O'Neil, and Edgar and Connie J. Thompson. The owners of the fourth servient parcel are not parties herein.

In July 2010, Hoss hired counsel (Eugene Chittock) to pursue remedies against Hagen for allegedly interfering with the easement. The year before hiring counsel, Hoss had paid Vernon Templeton, a surveyor, $600 to "set spikes at the angle points" to indicate the "'centerline existing road easement'" based on a recorded 1995 parcel map. At the direction of counsel, Hoss asked Templeton to perform a full survey of the easement, which he did on August 17, 2010, and for which he was paid $900.

The original complaint in this case was filed on September 22, 2010, and various amended complaints and a cross-complaint ensued; trial briefs were filed on March 13 and March 20, 2012. None of these documents are in the record on appeal.

*The Motion to Disqualify*

On March 22, 2012, Hoss moved to disqualify Frank Cady, counsel for Hagen, and Templeton and members of his engineering firm.[3]

Initially, the sole evidentiary support for the disqualification motion consisted of Chittock's declaration and attached exhibits.

Chittock's declaration asserts that on August 9, 2010, he spoke with Templeton over the telephone and Templeton agreed to serve as an expert witness in the case. Several days later Chittock met with Templeton, who asked how Chittock planned to prove that the width of the easement was 27 feet, and Chittock "responded by explaining our theory of the case and trial strategy. Although I doubt I referred specifically to the attorney-client privilege or attorney work product doctrine, I did convey to Mr. Templeton the confidential nature of the information being shared." Further

_____

[3] Templeton's firm is NST Engineering (NST); the two other experts from the firm who Hoss sought to disqualify were Korbe Brenner and Fred Nagel. Given our resolution of this case, it is not necessary to determine what information was exchanged between persons within the firm. (Cf. *Western Digital Corp. v. Superior Court* (1998) 60 Cal.App.4th 1471, 1482-1488 (*Western Digital*) [fact one expert in a firm should be disqualified did not compel disqualification of another expert in that firm].)

conversations with Templeton and his firm followed. On or about August 19, 2010, Chittock spoke with Templeton "to discuss additional details concerning the map he was supposed to produce. Confidential information was again provided to Mr. Templeton, as the map was intended to reflect plaintiffs' theory of the case." However, the map Templeton drew "did not show the location of the claimed encroachments." On August 26, 2010, a settlement conference with the parties took place in Chittock's office, but did not resolve the dispute. Templeton declined to serve as an expert witness, and he later was designated as an expert by Hagen's counsel, Cady.

Chittock's declaration also asserted that he spoke with Jeff Morrish, an NST engineer, and claimed both that he "provided confidential information concerning plaintiff's theory of the case to Mr. Morrish" and that *his clients* shared "confidential and privileged information" with Morrish. Chittock's basis of knowledge for information conveyed by his clients is not established by his declaration.

*The Opposition*

Hagen's opposition principally relied on two legal points. First, at the settlement conference referenced by Chittock, the map reflecting Chittock's theory of the case was seen and discussed by the parties, therefore any privilege pertaining thereto was waived. Second, Chittock failed to describe any purportedly confidential information revealed to Templeton, or its materiality to the case.

Templeton declared that he and his firm had "done all of the surveying and mapping" for the relevant land except for one 1981 parcel map made by Joe Rickett. In 2009, Hoss hired NST to survey and map the area based on the firm's past work, and in 2010 Templeton added information as requested, resulting in the map given to Chittock for the settlement meeting. "At no time . . . were we either engaged or hired as consultants or experts, provided any or told we were [being] provided any confidential information [or] told that our work for them (plaintiffs) was for a lawsuit[.]" Templeton's firm had worked on the Nelson Ranch since 1982, "processed no less than

4

five (5) recorded parcel maps and two (2) lot line adjustments of the lands[,]" and surveyed the centerline "several times from 1982 through 1999 before being requested by Mrs. Hoss . . . to do it again in 2009 and again in 2010."

Templeton denied the substance of his conversations as recounted by Chittock's declaration, and declared that neither Chittock nor plaintiffs told him they wanted him or his firm to act as a consultant or expert "in any anticipated or actual litigation. Nor would I have agreed to do so because, as I told the Hosses from day one, I did not believe they had any rights greater than what the 1981 decree gave them. At no time did Mr. Chittock nor the Hosses provide me with any information concerning what their legal theory(ies) were." Nor was Templeton told that anything he was doing was confidential. In particular, Templeton did not believe the plaintiffs had the right to a 27-foot roadway, *and he had told them so*, although he staked points 13.5 feet from the centerline at their request, plus an additional six feet out, thinking they were coming to "some sort of 'road' agreement concerning the right-of-way, which is a common occurrence." Templeton told Chittock, as he had told plaintiffs, "that I did not agree that they had a 27' wide travelled way because the court decree said they had what existed in 1981, which was not 27' wide." Templeton admitted that when he met Chittock on August 12, 2010, "Chittock told me that he could make a good argument to the court to claim that they did in fact have a 27' wide travelled way." This was the first reference to court Templeton had heard, and Chittock "did not say anything or explain anything as to what such argument [to the court] would be." Further, Templeton thought Chittock was speaking hypothetically and "I still assumed the parties were working on an agreement and had a meeting coming up to discuss such agreement. In any event, I told Mr. Chittock something to the effect that if he did take this to court, to not call me as a witness because I did not agree that he 'could make a good argument' [i.e., for a 27-foot right-of-way] and I would testify that way." A notation on a map that indicated a 27-foot right-of-way,

5

purportedly used by Chittock during the settlement conference, was not placed there by Templeton's firm.

Defendants declared that during the settlement conference, Chittock displayed a map with a note indicating a "27-foot travelled way" that Chittock claimed was made by NST, and that Chittock claimed the easement itself was 40 feet wide, because the width was stated at 27 feet on maps recorded "after the 1966 grant deed and Judge Harvey's 1981 order[,]" and "per County standards" plaintiffs had the right to build ditches on either side, which would take up an additional "6.5 feet and therefore his clients had to have an easement of 40 feet[.]"

Morrish's declaration denied that he had received any confidential information from Chittock, or "detailed information concerning the 'theories' of his case. Such legal theories would have meant nothing to me anyway since I did not know any particulars about the matter of which [Chittock] seemed concerned."

Cady's declaration asserts he was retained by defendants on September 28, 2010, after Chittock's meeting with them. Cady's clients told him that Chittock had shown them a map and recorded documents, and "fully explained to them, mostly in response to their questions, his entire theory of his case as to why he believed his client had a 27' wide roadway and a 40' wide easement," and for this reason Cady believed he was free to speak with Templeton. On November 12, 2010, after a local bar association meeting, Chittock and his associate freely discussed with Cady their theory of the case, and in particular explained why they had not filed the current dispute in the original 1981 action granting injunctive relief (such as by moving for contempt), but instead based their claims on subsequent actions, to wit, a post-1981 recorded map indicating a 27-foot travelled way, and County road standards calling for "six or so feet" on either side of a road for drainage purposes. On November 30, 2010, Cady and Chittock again met and Chittock again outlined his theory of the case. Cady then marshaled publicly available documents and maps to refute Chittock's theory, and on January 10, 2011, reviewed them

6

with Chittock "so that I could show him that the ranch road in 1966 and again in 1982 was just as Judge Harvey had found, not wide enough for two cars to pass." Further discussions about "our respective legal theories" took place, and those theories were outlined in "no less than 27 pleadings with this court within the four corners of which each of us set forth repeatedly our respective legal theories[.]"[4]

*Reply to Opposition*

Chittock's reply declaration asserted Templeton had a motive to lie arising from an unrelated small claims action, and described further details of purported conversations between him and Templeton. Chittock conceded discussing the case with Cady, but claimed "I certainly did not share *all* my theories or trial strategies."[5]

Plaintiff Anna Hoss declared she discussed with Templeton the "probability" of litigation over the easement as early as May 6, 2009. Her husband declared he had read his wife's notes and her declaration and that her declaration was "accurate to the best of my recollection."

*Further Opposition*

Templeton declared he was not biased against Chittock because of the small claims case, which he had lost on a statute of limitation ground, not on the merits. He denied that Anna Hoss told him there was a probability of litigation, and if she had done so, he would have told her his firm was not available. He had told her several times that she did *not* have a 27-foot road easement.

_____

[4] The Register of Actions shows Hagen repeatedly demurred, resulting in a third amended complaint, and the parties filed their trial briefs *before* the motion to disqualify. Absent a record showing otherwise, we infer the legal theories of the parties were shown by the court documents. (See *Sutter*, *supra*, 171 Cal.App.4th at p. 498.)

[5] Chittock initially argued only that the opposition was untimely and too long, but he was later granted permission to file a substantive reply. He mentions these points on appeal, but fails to head or argue them. Therefore we disregard them. (*Loranger v. Jones* (2010) 184 Cal.App.4th 847, 858, fn. 9 (*Loranger*).)

7

Declarations by several defendants and by the daughter of the O'Neil defendants showed the Hosses were not in the room during the meeting where Chittock displayed and distributed copies of the relevant map.

*Denial of the Motion and Subsequent Events*

The trial court denied the motion.

The trial court first found "the mere hiring of Mr. Templeton by Plaintiff Hoss in May 2009 to perform a center line survey of the easement at issue and the subsequent hiring of Mr. Templeton in July of 2010 by counsel Cady [*sic*, Chittock] did not create a confidential relationship. The court finds that based upon the declarations submitted the moving parties have not proved by a preponderance of the evidence that it was objectively reasonably for the moving parties to subsequently conclude that a confidential relationship existed."

The trial court also found "assuming for purposes of argument that a confidential relation[ship] was established . . . the moving parties have not proven by a preponderance of the evidence that confidential or privileged information was disclosed to Vern Templeton or to the other named witnesses. The court finds that a discussion of the strategy of the Plaintiffs or the Plaintiffs' counsel['s] view of the law or other claimed disclosures as set forth in moving and responding papers of the moving parties did not constitute disclosures of privileged or confidential information."[6]

Hoss timely filed this appeal. The appeal lies. (See *Machado v. Superior Court* (2007) 148 Cal.App.4th 875, 882.)[7]

_____

[6] Various objections had been made, but the trial court did not rule on them, and they are not relevant to describe on appeal, as neither party heads any claim about them.

[7] The trial court has stayed the proceedings, pending resolution of this appeal.

## DISCUSSION

### I

### *Standard of Review*

"On review of an order granting or denying a disqualification motion, we defer to the trial court's decision, absent an abuse of discretion. [Citations.] The trial court's exercise of this discretion is limited by the applicable legal principles and is subject to reversal when there is no reasonable basis for the action." (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 585.) "Even when there are no factual findings, if substantial evidence supports the trial court's implied findings of fact, an appellate court reviews the conclusions based on the findings for abuse of discretion. [Citation.] The same is true when the trial court has taken the extra step of stating the factual reasons for its disqualification order."[8] (*Ibid.*)

Another applicable rule of appellate review also applies in this case because, "A factual contest based on written evidence is treated like other factual contests." (*California Correctional Supervisors Organization, Inc. v. Department of Corrections* (2002) 96 Cal.App.4th 824, 832 (*CCSO*).) On appeal, we construe the evidence in the light favorable to the trial court's ruling. (See *Doak v. Bruson* (1907) 152 Cal. 17, 19 ["If there is any conflict in the affidavits, those in favor of the prevailing party must be taken as true, and the facts stated therein must be considered established"]; *Toyota Motor Sales U.S.A., Inc. v. Superior Court* (1996) 46 Cal.App.4th 778, 783 (*Toyota Motor Sales*).) The trial court was free to disbelieve Hoss's evidence and believe Hagen's evidence. (See *Hicks v. Reis* (1943) 21 Cal.2d 654, 659-660 ["Provided the trier of the facts does

_____

[8] Our Supreme Court has said that "a disqualification motion involves concerns that justify *careful review* of the trial court's exercise of discretion." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1144, emphasis added.) This point has been duly repeated, including by this court. (See *Collins v. State of California* (2004) 121 Cal.App.4th 1112, 1123.) But we note that we give "careful review" to *all* matters properly brought before us.

not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted"]; *CCSO, supra*, 96 Cal.App.4th at p. 832.) We presume the trial court's factual findings are supported by the evidence, and it is Hoss's burden, as the appellant, to show that they are not. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman*).) As a corollary, an appellant who fails to state the facts fairly forfeits evidentiary claims. (*Foreman, supra,* 3 Cal.3d at p. 881.)

II

*Application of Legal Standards*

Hoss claims the trial court improperly followed federal precedent, rather than following controlling California law.[9] We disagree.

The order denying disqualification states the movants had to show (1) that it was objectively reasonable for them to believe a confidential relationship existed between them and Templeton, *and* (2) that "confidential or privileged information was actually disclosed by moving parties or their counsel" to Templeton.

In support of this legal standard, the trial court cited two federal cases, *Wang Laboratories, Inc. v. Toshiba Corp*. (E.D. Va. 1991) 762 F.Supp. 1246 (*Wang*) and *Paul v. Rawlings Sporting Goods* Co. (S.D. Ohio 1988) 123 F.R.D. 271 (*Paul*).

*Paul*, an early case on the issue of expert disqualification, held as follows:

> "[T]he proper focus in such situations is to determine, first, whether the attorney or client acted reasonably in assuming that a confidential or fiduciary relationship of some sort existed and, if so, whether the relationship developed into a matter sufficiently substantial to make disqualification or some other judicial remedy appropriate. Stating each proposition negatively, if any disclosures of privileged or confidential material were undertaken without a

_____

[9] Hoss also discusses the *tentative* decision. Even if the tentative decision could have relevance after the *final* decision, the tentative decision is not in the record. We disregard any references to it, and to other facts Hoss refers to without record citations. (See *Duarte*, *supra*, 72 Cal.App.4th at p. 856.)

10

reasonable expectation that they would be so maintained (so that, in effect, any confidentiality or privilege relating to the matters communicated was waived), or if, despite the existence of a relationship conducive to such disclosures, no disclosures of any significance were made, it would seem inappropriate for the court to dictate to the expert or his new employer that his participation in the case be limited or eliminated." (*Paul*, *supra,* 123 F.R.D. at p. 278.)

In *Wang*, a patent expert was consulted by an attorney trying to prove the validity of certain patents, but the expert wrote a report concluding the patents were invalid, and he was later retained by opposing counsel. (*Wang*, *supra*, 762 F.Supp. at pp. 1246-1247.) Because the parties contested "whether the earlier retention and passage of confidential information occurred[,]" *Wang* applied the two-step *Paul* test. (*Id*. at p. 1248.)

The test derived from *Paul* and *Wang* has been endorsed in California, by *Shadow Traffic Network v. Superior Court* (1994) 24 Cal.App.4th 1067, 1079-1080 & 1080-1081, fn. 9 (*Shadow Traffic*). *Shadow Traffic* quoted *Paul* in part as follows:

> "'[I]f any disclosures of privileged or confidential material were undertaken without a reasonable expectation that they would be so maintained (so that, in effect, any confidentiality or privilege relating to the matters communicated was waived), or if, despite the existence of a relationship conducive to such disclosures, no disclosures of any significance were made, it would seem inappropriate for the court to dictate to the expert or his new employer that his participation in the case be limited.'" (*Shadow Traffic*, *supra*, 24 Cal.App.4th at p. 1080, quoting *Paul*, *supra*, 123 F.R.D. at p. 278, and citing other authorities.)

Accordingly, "[C]ommunications made to a potential expert in a retention interview can be considered confidential and therefore subject to protection from subsequent disclosure even if the expert is not thereafter retained *as long as there was a reasonable expectation of such confidentiality*." (*Shadow Traffic*, *supra*, 24 Cal.App.4th at p. 1080, emphasis added.) After finding on the facts that such a confidential relationship existed, *Shadow Traffic* then considered whether any "confidential communication" was given to the expert, a point on which the evidence conflicted, and deferred to the trial court's resolution of that factual conflict to find that confidential material had been given to the expert. (*Id*. at pp. 1082-1084.) *Shadow Traffic* then

11

considered whether the expert gave that confidential information *to the opposing counsel*, applied a presumption that this had occurred, and found the presumption had not been rebutted. (*Id*. at pp. 1084-1087; see *Toyota Motor Sales, supra*, 46 Cal.App.4th at pp. 781-782 [if former consultant possessed material confidential information, "a rebuttable presumption arises that the consultant has disclosed such information to present counsel"].) *Shadow Traffic* also cited *Wang* with approval, albeit in two footnotes. (*Shadow Traffic, supra,* at pp. 1080-1081, fn. 9 & p. 1083, fn. 11.)

In this case, the trial court followed the *Shadow Traffic* mode of analysis, although it did not cite *Shadow Traffic,* but instead cited the root authorities, *Paul* and *Wang*.[10]

The trial court first found "the mere hiring" of Templeton by Hoss to stake the center line in 2009 and "the subsequent hiring of Mr. Templeton in July of 2010" at Chittock's direction "did not create a confidential relationship" and Hoss had not carried the burden to show it was objectively reasonable to believe otherwise. The trial court alternatively found that *even if* a confidential relationship was shown, Hoss had not proven any confidential or privileged information was disclosed to Templeton, because "a discussion of the strategy of the Plaintiffs or the Plaintiffs' counsel['s] view of the law or other claimed disclosures as set forth in moving and responding papers of the moving parties did not constitute disclosures of privileged or confidential information." Therefore, the trial court had no reason to consider whether to apply a presumption that Templeton passed on any confidential information *to Cady*, having found Templeton never obtained such information *from Chittock*.

Because the trial court made findings consistent with the *Shadow Traffic* mode of

_____

[10] Indeed, *Shadow Traffic* was cited and discussed by the moving and opposing papers, and it was discussed in detail at the hearing on the motion to disqualify, including its reliance on federal cases. This belies Hoss's evident view that the trial court was ignorant of California law.

analysis, the trial court properly followed California law.[11]

Without a separate heading or citation to any supporting authority, Hoss claims that we should extend the law to compel disqualification based on a mere "appearance of impropriety," and contends that was the basis for the trial court's alleged *tentative* decision (see fn. 9, *ante*).  This argument is forfeited both because it was not separately headed and Hoss provided no supporting authority in the opening brief to extend the law. (See *Loranger*, *supra*, 184 Cal.App.4th at p. 858, fn. 9.)  Raising the contention in the reply brief is insufficient.  (*Kahn v. Wilson*, *supra*, 120 Cal. at p. 644.)

Moreover, as Hagen points out, California law is to the contrary:

> "The trial court's power to disqualify counsel is derived from the court's inherent power '[t]o control in furtherance of justice, the conduct of its ministerial officers.'  [Citations.]  Disqualification motions implicate several important interests, among them are the clients' right to counsel of their choice, the attorney's interest in representing a client, the financial burden of replacing a disqualified attorney, and tactical abuse that may underlie the motion.  [Citation.]  The 'paramount' concern in determining whether counsel should be disqualified is 'the preservation of public trust in the scrupulous administration of justice and the integrity of the bar.'  [Citations.]  It must be remembered, however, that disqualification is a drastic course of action that should not be taken simply out of

_____

[11]  In the reply brief, Hoss contends the trial court "failed to indicate on the record that it considered the appropriate factors and made specific findings of fact when weighing the evidence in a recusal motion."  To the extent Hoss intended to raise a new point not answered by the above discussion, that new point comes too late, and therefore we deem it to be forfeited.  (See *Kahn v. Wilson* (1898) 120 Cal. 643, 644.)

Also for the first time in the reply brief, Hoss contends the trial court "almost certainly" regarded the motion with disfavor because the judge knew Cady "for many years" and "once practiced law in the same office."  This claim of bias is forfeited both because it was not made in the opening brief (*Kahn v. Wilson*, *supra*, 120 Cal. at p. 644), and because it is not supported by record references (*Duarte*, *supra*, 72 Cal.App.4th at p. 856).  We add two more things about this inappropriate claim.  First, the fact that a judge rules against a party does not show bias.  (See *Shakin v. Board of Medical Examiners* (1967) 254 Cal.App.2d 102, 116-117.)  Second, absent a record showing bias, castigating the fact finder is both unpersuasive and improper. (See *Lazzarotto v. Atchison, T. & S.F.R. Co.* (1958) 157 Cal.App.2d 455, 462 ["counsel . . . should not have assumed that we would be influenced by their epithets"].)

13

hypersensitivity to ethical nuances or the appearance of impropriety." (*Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, 218-219; see *DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 833["an appearance of impropriety by itself does not support a lawyer's disqualification"]; *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 305-309.)

Accordingly, we decline Hoss's request that we change California law.[12]

### III

#### *Substantial Evidence*

Having concluded that the trial court applied the proper legal standards to the disqualification motion, we now explain why the evidence, viewed in the appropriate light, supports each of the trial court's alternatively dispositive findings.[13]

A. *Confidential Relationship*

The trial court found it was not objectively reasonable for Chittock to believe he had created a confidential relationship with Templeton.

In making this finding, the trial court impliedly credited Templeton's declaration over Chittock's declaration. Templeton declared he did not know litigation was contemplated when he performed two routine services at Hoss's request, namely staking the centerline and then surveying the road, services similar to those Templeton and his firm had done on that very property over the past 30 years. Templeton denied that either Chittock or Hoss told him their conversations were confidential or made in anticipation

_____

[12] The only California authority cited by Hoss--belatedly in the reply brief--involves the standards for disqualification when an attorney represents a client against a former client or related entity, impairing the duty of client confidentiality, or the duty of client loyalty, or both duties. (See *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.* (1995) 36 Cal.App.4th 1832, 1838-1845.) That is not the fact situation here. (See *Paul*, *supra*, 123 F.R.D. at p. 281 ["there is less stigma attached to an expert 'changing sides' in the midst of litigation than an attorney, who occupies a position of higher trust"].)

[13] Throughout the briefs, Hoss states the facts as if the trial court was required to credit the facts stated in the moving declarations. We would be fully justified in deeming all evidentiary issues to be forfeited. (See *Foreman*, *supra*, 3 Cal.3d at p. 881.) However, we elect to address them in this appeal. That is not to be taken by counsel as an invitation to ignore proper appellate procedures in the future.

14

of litigation. These facts support the trial court's finding that it was not objectively reasonable to believe a confidential relationship with Templeton existed.

Hoss claims "Templeton admits that Chittock discussed the possibility of litigation during" their August 12, 2010 meeting. The page cited in support of this claim is to the portion of Templeton's declaration wherein Templeton declared he "assumed [Chittock] was talking about a hypothetical situation because I still did not know of any planned or existing litigation and I still assumed the parties were working on an agreement and had a meeting coming up to discuss such agreement. . . . Again, at no time during this conversation was I told by Mr. Chittock that they were doing this work in anticipation of litigation or that what we were discussing was confidential." Thus, the declaration, in context, shows Templeton did *not* think there was any pending or planned litigation, or that his conversation with Chittock was confidential.

Contrary to Hoss's claim in the reply brief, an expert's "naked denial" of receipt of confidential information *can* provide substantial evidence to support an order denying disqualification. Generally, the testimony of a single witness is sufficient to prove any fact. (See *People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.) "[T]he testimony of a witness offered in support of a judgment may not be rejected on appeal unless it is physically impossible or inherently improbable and such inherent improbability plainly appears." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204 (*Beck*).) Templeton's declarations were not inherently improbable. They were detailed, consistent, "'reasonable in nature, credible, and of solid value'" (*Beck*, *supra*, 44 Cal.App.4th at pp. 1203-1204) and therefore provided substantial evidence to support the trial court's findings.

The dispute about whether particular conversations were or were not confidential could have been avoided had Chittock asked Templeton to sign a confidentiality agreement, the "better practice" emphasized in the very authority Chittock relies on. (*Shadow Traffic*, *supra*, 24 Cal.App.4th at p. 1083 & fn. 11; see *Western Digital*, *supra*,

60 Cal.App.4th at p. 1481, fn. 2 ["wiser policy" is to document the nature of the expert interview]; *Wang*, *supra*, 762 F.Supp. at p. 1250 ["A lawyer seeking to retain an expert and establish a confidential relationship should make this intention unmistakably clear and should confirm it in writing"]; *Paul*, *supra*, 123 F.R.D. at p. 279 [it would be "ideal" to document the confidential relationship with the expert and it is not "unfair to place the burden" on the attorney to ensure the expert understands the nature of the relationship].) "A few simple steps in the right direction at the beginning of the [attorney-expert] relationship protect against countless problems down the road." (Hebert, *Protecting You and Your Expert Witness from Conflicts of Interest* (Cont.Ed.Bar Sept. 1998) 20 Civ. Lit. Rptr. 202, 207; see also Morrow, *Issues Relating to Expert Disqualification* (State Bar of Cal., Litigation Section, Spring 2004) 17 Cal. Litigation 24, 30.) This answers Hoss's claim that it "remains mysterious" what evidence would have satisfied the trial court that a reasonable belief in a confidential relationship existed. Although facts other than a confidentiality agreement *might* show such a reasonable belief, Chittock's failure to have Templeton sign one relegated Chittock to relying on his own declaration to prove such fact, and the trial court impliedly found that declaration unpersuasive.

      B. *Disclosure of Confidential Material*

      The trial court made the alternative finding that no confidential information was communicated to Templeton. This finding, too, is supported by the record.

      Templeton has always been of the opinion that Hoss does *not* have a 27-foot right-of-way. He shared that opinion first with Hoss, then with Chittock, and then with Cady. It was not based on any information--confidential or otherwise--given to him by Hoss or by Chittock. It was based on Templeton's professional experience generally, coupled with his knowledge of this particular road, the 1966 deed, Judge Harvey's 1981 decree, and repeated surveys of this property over many years by his firm. The only thing Chittock told Templeton that Templeton did not already know was that Chittock thought it was important that one particular recorded map made reference to a 27-foot right-of-

16

way.  This was not confidential information, because the record shows Chittock openly shared that theory at the settlement meeting, in discussions with Cady, and in documents filed with the trial court in this case.  (See fn. 4, *ante*.)

In rejecting a claim similar to Hoss's, other courts have found disqualification unwarranted where the information given to the expert was reflected by pleadings, discovery, and voluntary disclosures.  (See *Western Digital*, *supra*, 60 Cal.App.4th at pp. 1482-1483 [information given to expert was reflected by the pleadings, discovery responses and a settlement statement outlining "in great detail Amstrad's damage claims and theories"]; *Toyota Motor Sales*, *supra*, 46 Cal.App.4th at p. 783 ["factual or technical information that was discoverable in the case"]; *Nikkal Industries, Ltd. v. Salton, Inc.* (S.D.N.Y. 1988) 689 F.Supp. 187, 191-192 ["essentially technical" information].)  Here, as just explained, nothing Chittock said was material to Templeton's opinion.  (See *Paul*, *supra*, 123 F.R.D. at p. 180 [the expert "would have produced the same report and drawn the same conclusions even if he had never spoken to" the first attorney].)

Accordingly, the trial court's finding that no confidential information was given to Templeton is supported by the evidence, viewed in favor of the ruling.

## MOTION FOR SANCTIONS

Although we have rejected Hoss's appellate claims, and have pointed out several breaches of appellate procedure by Hoss's counsel, we do not find that their prosecution of this appeal was for an improper motive and do not find that their claims are so bereft of substance as to meet the stringent standards set by our Supreme Court for finding an appeal to be frivolous.  (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649-651.)  Accordingly, we deny Hagen's motion for sanctions for a frivolous appeal.

17

## DISPOSITION

The order denying disqualification is affirmed.  Hoss shall pay Hagen's costs of this appeal.  (See Cal. Rules of Court, rule 8.278.)


            DUARTE            , J.


We concur:


       NICHOLSON      , Acting P. J.


        MAURO           , J.